165 P.3d 980

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Susan REIS, aka Suzanne Reis, Defendant–Appellee.**

**State of Hawai'i, Plaintiff–Appellant,**

v.

**Susan Reis, aka Suzanne Reis, Defendant–Appellee.**

Nos. 27171, 27172.

Supreme Court of Hawai'i.

Aug. 21, 2007.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant, State of Hawai'i.

Stephen T. Niwa, Deputy Public Defender, on the briefs, for defendant-appellee, Susan Reis.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; and ACOBA, J., Dissenting.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant State of Hawai'i [hereinafter, "the prosecution"] appeals from the January 11, 2005 judgment of conviction and probation of the circuit court of the first circuit, the Honorable Steven S. Alm presiding, convicting the defendant-appellee Susan Reis in Criminal (Cr.) No. 04–1–0028 of promoting a dangerous drug in the third degree (Count I), in violation of Hawai'i Revised Statutes (HRS) § 712–1243 (Supp.2002), unlawful use of drug paraphernalia (Count II),

in violation of HRS § 329–43.5(a) (1993), and prostitution, in violation of HRS § 712–1200 (Supp.1998) (Count III), and convicting her in Cr. No. 04–1–0675 of the same drug offenses based upon a separate incident, and sentencing her, *inter alia,* to a five-year period of probation, pursuant to HRS § 706–622.5 (Supp.2004).[1]

On appeal, the prosecution asserts that the circuit court imposed an illegal sentence in sentencing Reis to probation, inasmuch as, in light of an undisputed prior conviction, she was a repeat offender and, therefore, should have been sentenced pursuant to HRS § 706–606.5 (Supp.1999).[2]

For the reasons discussed *infra* in section III, we hold that the circuit court erred in sentencing Reis as a first-time drug offender rather than a repeat offender. We therefore vacate the January 11, 2005 sentence and remand for resentencing as a repeat offender, pursuant to HRS § 706–606.5.

1. Effective July 1, 2002, the legislature enacted the predecessor statute to HRS § 706–622.5 (Supp.2004) in Act 161, § 3, later codified at HRS § 706–622.5 (Supp.2002), which provided in relevant part:

 **Sentencing for first-time drug offenders....**

 (1) Notwithstanding any penalty or sentencing provision under [HRS ch. 712, pt. IV (concerning offenses related to drugs and intoxicating compounds)], a person convicted for the first time for any offense under [HRS ch. 712, pt. IV] involving possession ..., not including to distribute or manufacture as defined in [HRS § ] 712–1240 [ (Supp.1997) ], of any dangerous drug ... who is non-violent, as determined by the court after reviewing the:

 (a) Criminal history of the defendant;

 (b) Factual circumstances of the offense for which the defendant is being sentenced; and

 (c) Other information deemed relevant by the court;

 shall be sentenced in accordance with [paragraph] (2); provided that the person does not have a conviction for any violent felony for five years immediately prece[ ]ding the date of the commission of the offense for which the defendant is being sentenced.

 (2) A person eligible under [paragraph] (1) shall be sentenced to probation to undergo and complete a drug treatment program....

 *See* 2002 Haw. Sess. L. Act 161, §§ 3 and 12 at 572, 575. Effective July 1, 2004, the legislature amended HRS § 706–622.5 to read:

 **Sentencing for first-time drug offenders....**

 (1) Notwithstanding [HRS § ] 706–620(3) [ (disallowing probation for repeat offenders)], *a person convicted for the first time for any offense under [HRS ch. 712, pt. IV] involving possession ..., not including to distribute or manufacture as defined in [HRS § ] 712–1240, of any dangerous drug ...* is eligible to be sentenced to probation under [paragraph] (2) if the person meets the following criteria:

 (a) The court has determined that the person is nonviolent after reviewing the person's criminal history, the factual circumstances of the offense for which the person is being sentenced, and any other relevant information[.]

 ....

 (2) A person eligible under [paragraph] (1) may be sentenced to probation to undergo and complete a substance abuse treatment program if the court determines that the person can benefit from substance abuse treatment and, *notwithstanding that the person would be subject to sentencing as a repeat offender under [HRS § ] 706–606.5, the person should not be incarcerated in order to protect the public. ...*

 *See* 2004 Haw. Sess. L. Act 44, §§ 11 and 33 at 214, 227; HRS § 706–622.5(1) and (2) (Supp. 2004) (emphases added). Section 29 of Act 44, absent from the codified version found at HRS § 706–622.5, reads as follows: "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date." *See* 2004 Haw. Sess. L. Act 44, § 29 at 227.

2. HRS § 706–606.5 provided in relevant part:

 (1) Notwithstanding [HRS § ] 706–669 [ (Supp.1996) (providing for parole hearing and procedure therefor) ] and any other law to the contrary, any person convicted of ... [HRS § ] 712–1243 ... and who has a prior conviction ... for ... any of the class C felony offenses enumerated above [including HRS § 708–836, relating to unauthorized control of [a] propelled vehicle,] ... shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:

 (a) One prior felony conviction:

 ....

 (iv) Where the instant conviction is for a class C felony offense enumerated above— one year, eight months;

 ....

 (2) Except as in [paragraph] (3)[ (concerning special terms for young adults) ], a person shall not be sentenced to a mandatory minimum period of imprisonment under this section unless the instant felony offense was committed ...:

 ....

 (e) Within five years after a prior felony conviction where the prior felony conviction was for a class C felony offense enumerated above[.]

 Effective May 8, 2006, the legislature amended HRS § 706–606.5 in respects immaterial to the present matter. *See* 2006 Haw. Sess. L. Act 80, §§ 1 and 7 at 234–37.

## I. BACKGROUND

On January 5, 2004, Reis was charged by complaint in Cr. No. 04-1-0028 with Counts I, II, and III in connection with events that occurred on or about December 23, 2003.

On April 13, 2004, in Cr. No. 04-1-0675, Reis was charged by complaint with new violations of HRS § 712-1243 (Supp.2002) (Count I) and HRS § 329-43.5(a) (1993) (Count II) in connection with events that occurred on or about April 1, 2004.

On June 22, 2004, in a consolidated proceeding, Reis pled guilty to all counts. On July 9, 2004, the prosecution filed a motion for sentencing as a repeat offender. The prosecution's motion was based on Reis's prior conviction in 2001, in Cr. No. 01-1-1533, of unauthorized control of a propelled vehicle, in violation of HRS § 708-836. Reis did not contest the fact of the prior conviction.

On January 10, 2005, the circuit court conducted a hearing. Reis stipulated to her eligibility for sentencing as a repeat offender. The prosecution opposed probation, requesting the court to impose concurrent indeterminate five-year terms of imprisonment in all three cases.[3]

After reviewing Reis's efforts at rehabilitation since her arrest, the circuit court ultimately reasoned that

> the legislature has given the Court the discretion and the opportunity when we think it's appropriate not to be giving repeat offender and not to be giving prison time.... [T]alk is ... very cheap, but you have done what you said you were going to do. Since you folks brought this up in the summer, you've gone through one place at [the] Queen's [Medical Center] and then you've transferred to Diamond Head [a drug rehabilitation program].... [Y]ou've done well in there. I'm going to give you a chance to continue on this road. So I'm going to deny the motion for repeat offender. I will place you on probation for five years. The jail is credit for time served. I don't think that's appropriate right now.

On January 11, 2005, the circuit court entered its judgment of conviction and sentence, sentencing Reis to a five-year term of probation.

On January 25, 2005, the prosecution filed a motion for reconsideration of sentence, and the circuit court conducted a February 22, 2005 hearing on the motion. The prosecution argued that the circuit court erred in sentencing Reis to probation under HRS § 706-622.5 (Supp.2004), originally enacted as Act 44, see supra note 1, noting that Act 44 did not go into effect until July 1, 2004, while Reis's convictions were based upon incidents that occurred on December 23, 2003 and April 1, 2004 and complaints that were filed on January 5, 2004 and April 7, 2004, respectively. The prosecution argued that, pursuant to our precedent in State v. Smith, 103 Hawai'i 228, 81 P.3d 408 (2003), and State v. Walker, 106 Hawai'i 1, 100 P.3d 595 (2004), Reis's repeat offender status under HRS § 706-606.5, see supra note 2—based upon Cr. No. 01-1-1533—trumped the provisions of HRS § 706-622.5, see supra note 1, " 'with respect to all cases involving rights and duties that mature[d], penalties that were incurred, [and] proceedings that were begun, before the effective date of Act 44' " and contended that, insofar as both prosecutions in the present matter were begun before July 1, 2004, Reis should have been sentenced to a period of imprisonment as a repeat offender.

Reis argued that because she was sentenced after July 1, 2004, the provisions of Act 44 applied to her cases because the language of Act 44, section 29 refers to "proceedings that were begun" before the effective date of the act, and Reis's sentencing hearing (in her view a "proceeding" within the meaning of Act 44, section 29), wholly separate and apart from her plea and conviction dates, was commenced after July 1, 2004. She distinguished the prospective application of Act 44 to her case from the retroactive application at issue in Walker, noting that

> in Walker, the defendant ... was sentenced ... in December 2003. So his actual sentencing was prior to the July 1, 2004 [effective date] of Act 44.

**3.** Reis acknowledged that her guilty pleas in Cr. No. 04-1-0028 and Cr. No. 04-1-0675, see supra, automatically revoked the probation she was serving in Cr. No. 01-1-1533.

In the present case, ... Reis was sentenced ... after the July 1st, 2004 [effective date] of Act 44. And we would argue that the language in there saying proceedings begun before July 1st, 2004, are not applicable. In our particular case, the actual proceeding is the sentencing itself.

*Id.* Reis then argued that

[i]t's clear from the language in ... Act 44 that [the legislature is] intending to give the courts more or greater discretion in terms of sentencing to allow for probation even for those persons who are eligible for repeat offender. And that is exactly what occurred in this case. She was sentenced after the effective date of the statute.

... So, for all those reasons, we believe that's exactly what Act 44 intended in this case, and we do not believe for that reason that *Walker* is dispositive.

The court conducted the following analysis:

All right. I agree with [Reis]. [In] *Walker* ... the arrest, the plea, the conviction, sentencing, all took place before Act D44's effective date, July 1, 2004. And Act 44 does say the Act ... ["]does not affect rights and duties that mature[d], penalties that were incurred, and proceedings that were begun before the effective date.["]

Here, ... Reis was arrested, she pled, and I think the plea was approximately a week before the Act 44 date.[4] But the sentencing was well after that. And there is no question the legislature in their word intended a broader group of non-violent drug offenders will be eligible for consideration for probation in order to undergo drug treatment. And that the legislature wants to present more discretion by the Court in sentencing. I believe that Ms. Reis fits into that criteri[on], and that both she and society will be better off with her getting dual-diagnosis care and the drug treatment care that are set up for her rather than sentencing her as a repeat offender and sentencing her to prison.

... I think [this case is] different from *Walker* because of the timing.... Penalties were incurred after the effective date

of Act 44. And proceedings that were begun, the Court is of the belief that when ... proceedings [are] being discussed, it is referring to the sentencing proceedings.

... [I]n *State v. Avilla*, 69 Haw. 509, [750 P.2d 78 (1988),] there's a similar ... clause describing that. ["]This Act does not affect the rights and duties that mature[d,] penalties incurred[,] and proceedings that were begun before its effective date.["] And the prosecution in *Avilla* argued that proceedings that were begun should refer to the initiation of the prosecution. The Supreme Court disagreed. They said that proceedings can also refer to bail proceedings, and in *Avilla*, this was a post-conviction bail proceeding. So it occurred after the conviction, and that, I think, certainly comports with our situation in this case.

In addition, the Supreme Court also pointed out in *Avilla* that when there is a doubt or doubleness of meaning, or indistinctness, or uncertainty of an expression used in the statute, that an ambiguity exists. And in such case, the Court should look at the intent of the legislature for guidance. And as I said before, the intent is clear, and that's to give the Court more discretion in sentencing.

The circuit court then denied the prosecution's motion. Pursuant to an extension, on March 11, 2005, the prosecution timely filed notices of appeal in both Cr. No. 04–1–0028 and Cr. No. 04–1–0675, which were docketed as Supreme Court Nos. 27171 and 27172, respectively. Our June 2, 2005 order consolidated the two appeals under No. 27171.

## II. *STANDARDS OF REVIEW*

### A. *Sentencing*

■ " 'The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed.' " *State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797

---

4. It bears noting that Reis entered her guilty pleas in both Cr. Nos. 04–1–0028 and 04–1–0675 and the circuit court adjudged her guilty on all counts in both matters on June 22, 2004, nine days before the provisions of Act 44 took effect.

(2001) (quoting *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)).

B. *Conclusions Of Law (COLs)*

 " 'A COL is not binding upon an appellate court and is freely reviewable for its correctness.' " *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 628, 851 P.2d 321, 326 (1993) (quoting *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28 (1992)). This court ordinarily reviews COLs under the right/wrong standard. *In re Estate of Holt,* 75 Haw. 224, 232, 857 P.2d 1355, 1359 (1993). Thus, " '[a] COL that is supported by the trial court's [findings of fact] and that reflects an application of the correct rule of law will not be overturned.' " *Estate of Caraang,* 74 Haw. at 628–29, 851 P.2d at 326 (quoting *Amfac, Inc.,* 74 Haw. at 119, 839 P.2d at 29). "However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Id.* at 629, 851 P.2d at 326 (quoting *Amfac, Inc.,* 74 Haw. at 119, 839 P.2d at 29) (internal quotation marks omitted).

*State v. Furutani,* 76 Hawai'i 172, [180], 873 P.2d 51, [59] (1994).

*Allstate Ins. Co. v. Ponce,* 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004) (some internal citations omitted) (bracketed material altered).

C. *Interpretation Of Statutes*

 The interpretation of a statute is a question of law reviewable *de novo. State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996).

Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray [v. Admin. Dir. of the Court],* 84 Hawai'i [138,] 148, 931 P.2d [580,] 590 [ (1997) ] (footnote omitted).

*State v. Koch,* 107 Hawai'i 215, 220, 112 P.3d 69, 74 (2005) (quoting *State v. Kaua,* 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–80 (2003)). Nevertheless, absent an absurd or unjust result, *see State v. Haugen,* 104 Hawai'i 71, 77, 85 P.3d 178, 184 (2004), we are bound to give effect to the plain meaning of unambiguous statutory language; we may only resort to the use of legislative history when interpreting an ambiguous statute. *State v. Valdivia,* 95 Hawai'i 465, 472, 24 P.3d 661, 668 (2001).

### III. DISCUSSION

A. *The Parties' Arguments*

1. *Reis contends that the circuit court correctly interpreted the allegedly ambiguous language of Act 44, section 29 to exclude the January 11, 2005 sentencing hearing, thereby correctly applying Act 44, section 11 prospectively to her case.*

 Reis and the prosecution disagree regarding the meaning of the following underscored phrases within Act 44's savings clause: "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date," *see supra* note 1. Reis maintains that the meaning of "incurred" and "proceedings" cannot be divined

with certainty from the plain language of the savings clause [5] and that the cases cited by the prosecution, which interpret the same language in other legislation, merely illustrate how statutory interpretations have varied, thereby bolstering her argument that the language of Act 44's savings clause is inherently ambiguous. (Citing *Walker; State v. Feliciano,* 103 Hawai'i 269, 274, 81 P.3d 1184, 1189 (2003); *Avilla,* 69 Haw. at 512, 750 P.2d at 80; *State v. Kai,* 98 Hawai'i 137, 44 P.3d 288 (App.2002); *State v. Werner,* 93 Hawai'i 290, 295, 1 P.3d 760, 765 (App.2000); *State v. Johnson,* 92 Hawai'i 36, 44, 986 P.2d 987, 995 (App.1999).)

Reis argues that, inasmuch as the foregoing terms are ambiguous, the circuit court correctly delved into the Act's legislative history to support the circuit court's COL that the word "proceedings" can refer, in isolation, to a sentencing hearing conducted after Act 44's effective date, thereby authorizing the circuit court's application of Act 44, section 11's amendments to HRS § 706–622.5, *see supra* note 1, so as to authorize sentencing Reis to probation.[6] In conclusion, she asserts that any ambiguity should be construed in her favor, in keeping with the rule of lenity, citing *State v. Shimabukuro,*

100 Hawai'i 324, 327, 60 P.3d 274, 277 (2002), *State v. Vallesteros,* 84 Hawai'i 295, 302, 933 P.2d 632, 639 (1997), and *State v. Rodgers,* 68 Haw. 438, 443, 718 P.2d 275, 277–78 (1986).

In light of the dissent's insistence on arguing that the provisions of Act 44, section 11 should be applied retroactively [7] (*see, e.g.,* dissenting opinion at 98, 113 & n.32, 165 P.3d at 999, 1014 & n.32), it is important to emphasize that Reis herself does not characterize her argument as implicating retroactive application. Reis contends only that the terms "proceedings" and "incurred" are ambiguous, which she argues justifies a review of the legislative history underlying Act 44. The legislative history, she argues, supports a construction of the term "proceedings" to include a sentencing hearing and of the term "incurred" to mean imposition of sentence, both of which would allow a *prospective* application of Act 44, section 11, *see supra* note 1, to her case by grounding the relevant events chronologically *after* Act 44's effective date. She does *not,* by contrast, characterize the application of Act 44's amendments to her case at sentencing as *retroactive*—which would require viewing the sentencing proceeding as part of the unitary criminal prose-

5. *Reis quotes HRS § 701–101(1) (1993), which provides that "amendments made by Act 314, Session Laws of Hawaii 1986, to this Code do not apply to offenses committed before the effective date of Act 314, Session Laws of Hawaii 1986" as an example of an unambiguous savings clauses that clearly excludes offenses committed prior to an effective date. She argues that the legislature, in Act 44, section 29, "chose to use the ambiguous terms of 'proceedings that were begun' and 'penalties that were incurred'" and argues that to conclude that the two phrases are not ambiguous would violate rules of statutory interpretation. (Emphasis added.)*

The dissent, too, asserts that to avoid ambiguity the legislature was somehow required to use the phrase "offense committed" in the savings clause and, by failing to do so, created ambiguity. Dissenting opinion at 104 n.7, 165 P.3d at 1005 n.7. As discussed *infra,* this court, in *State v. Van den Berg,* 101 Hawai'i 187, 191, 65 P.3d 134, 138 (2003), implicitly concluded that the plain language of the term "proceedings" in the standard savings clause betokened—so clearly as not to warrant further comment—the initiation of a criminal prosecution. Contrary to the implication of Reis's and the dissent's logic, the absence of one unambiguous term does not, *ipso*

*facto,* render another otherwise unambiguous term spontaneously ambiguous.

6. Reis cites to legislative committee reports to demonstrate that the intent underlying Act 44's amendments to HRS § 706–622.5 was "to clear up the confusion regarding repeat offenders and the criteria for eligibility for drug treatment, and permit more discretion by the court in sentencing" and thereby to increase the number of nonviolent drug offenders eligible for probation under HRS § 706–622.5. (Quoting 2004 Haw. Sess. L. Act 44, § 9 at 212–13.) Reis argues that the circuit court's interpretation of the savings clause comports with that intent.

7. The dissent argues that Act 44, section 29 does not prevent retroactive application of the ameliorative amendments to Reis's case. *See, e.g.,* dissenting opinion at 98, 113–14, 165 P.3d at 999, 1014–15. It is worth noting, therefore, that in *State v. Brantley,* 99 Hawai'i 463, 56 P.3d 1252 (2002), after analyzing an identical savings clause, *compare* 1999 Haw. Sess. L. Act 12, § 2 at 12 *with* 2004 Haw. Sess. L. Act 44, § 29 at 227, the dissent asserted that the same language represented "the legislature's express direction that the amendment was not to be applied retroactively." *Id.* at 483, 56 P.3d at 1272 (Acoba, J., dissenting).

cution initiated by the charging instruments dated January 5 and April 13, 2004—and, therefore, does not challenge this court's conclusion in *Walker*, 106 Hawai'i at 10, 100 P.3d at 604, that Act 44 does not apply retroactively.

Nevertheless, to the extent that Reis's arguments could be construed as *implicitly* arguing for retroactive application,[8] and in the interests of thorough analysis,[9] we address, *infra*, the dissent's arguments in favor of retroactive application of Act 44, section 11 to Reis's case.

2. *The prosecution argues that Act 44, section 29 unambiguously refers to offenses that were committed and criminal proceedings that were initiated prior to Act 44's effective date.*

The prosecution contends that the plain language of the savings clause bars Reis from access to Act 44's amendments because "a penalty is 'incurred' upon commission of the criminal offense," whereas the penalty itself "is *imposed* by the court at sentencing," and that Reis "incurred" the penalties at issue in December 2003 and April 2004, *prior* to Act 44's effective date. (Emphasis in original.) (Citing *State v. McGranahan*, 206 N.W.2d 88 (Iowa 1973); *Bilbrey v. State*, 76 Okla.Crim. 249, 135 P.2d 999 (1943); *State v. Matthews*, 131 Vt. 521, 310 A.2d 17 (1973).) Therefore, the prosecution argues, Reis "incurred" the penalties before July 1, 2004, and the plain language of the savings clause in Act 44, section 29, *see supra* note 1, prevents the sentencing court in the present matter from applying Act 44's amendments to Reis's convictions.

The prosecution further asserts that we have previously interpreted "proceedings" as unambiguously referring to unitary criminal proceedings initiated with a formal charge

and have rejected the argument that a sentencing hearing can qualify as a severable "proceeding" for purposes of escaping the effect of a savings clause. (Citing, *inter alia, Feliciano*, 103 Hawai'i at 273, 81 P.3d at 1188; *State v. Van den Berg*, 101 Hawai'i 187, 191, 65 P.3d 134, 138 (2003)). The prosecution also challenges the circuit court's reliance on *Avilla*, insisting that bail proceedings are distinct in nature and character from criminal proceedings, distinguishing the ambiguity discerned by this court in *Avilla* in the term "proceeding" from the plain language of Act 44, section 29. (Citing *State v. Miller*, 79 Hawai'i 194, 201, 900 P.2d 770, 777 (1995) (for the proposition that during appeal, the circuit court loses jurisdiction over the criminal proceeding but retains jurisdiction over bail).)

3. *The prosecution contends that, insofar as Reis committed two distinct drug-related offenses several months apart, her conviction for the latter offense precludes the circuit court from sentencing her as a first-time drug offender.*

Finally, the prosecution argues that the circuit court erred by failing to note that because Reis was convicted of two separate offenses of possession of cocaine—one occurring on December 23, 2003 and the other on April 1, 2004—she could not be a first-time drug offender with respect to the second of the two offenses and, hence, regardless of the interpretation of Act 44's savings clause, could not be eligible for sentencing as a first-time drug offender. (Citing *Koch*, 107. Hawai'i at 224, 112 P.3d at 78 (holding that Koch did not qualify as a first-time drug offender for two chronologically separate drug offenses for which he was convicted and sentenced on the same day at a consolidated hearing); *State v. Rodrigues*, 68 Haw. 124, 706 P.2d 1293 (1985) (holding that two of-

8. *Black's Law Dictionary* 1343 (8th ed.1999) defines a "retroactive law" as one "that looks backward or contemplates the past, affecting acts or facts that existed before the act came into effect." Therefore, although Reis does not employ the term "retroactive" in her arguments, insofar as she does seek to apply Act 44's amendments to events that occurred prior to the Act's effective date, we can construe an implicit argument for retroactive application.

9. The dissent notes two pending cases, *State v. Cruz*, No. 27242, and *State v. Tactay*, No. 27271, which implicate Act 44, section 29. Dissenting opinion at 101 n.3, 165 P.3d at 1002 n.3. The present opinion encompasses the arguments made by the parties in those matters, including the retroactivity argument made, at the most, only implicitly by Reis. We leave a discussion of the merits of those cases for another time.

fenses committed at separate times but for which sentence was imposed on the same day constituted separate convictions for purposes of HRS § 706–606.5 (Supp.1984)).)

Reis attempts to distinguish her cases from the proceedings in *Koch* by noting that, while in *Koch* the simultaneous entry of judgment of conviction was based on two separate findings of guilt entered on different days with respect to the two charges—one following a July 2003 jury trial and the other following an October 2003 no-contest plea— Reis entered a change of plea to guilty on both charges on the same day at the same proceedings, with the clear intention of doing so in order to be eligible for parole sentencing as a first-time drug offender. (Citing 107 Hawai'i at 223–24, 112 P.3d at 77–78.) She further argues that application of *Koch* to her cases would result in substantial prejudice to her, given her reliance on circuit court sentencing practices before the *Koch* decision, and would violate her right to due process because she committed the offenses in question and pled guilty prior to the date of the *Koch* decision. (Citing, *inter alia, State v. Ikezawa,* 75 Haw. 210, 220–21, 857 P.2d 593, 599 (1993) (setting forth a three-pronged test for analyzing the fairness of retroactive applicability of a decision); *Bouie v. Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *United States v. Newman,* 203 F.3d 700 (9th Cir.2000).)

**B.** *The Circuit Court Erred In Concluding That HRS § 706–622.5 (Supp.2004) Applied To Reis's Cases.*

 1. *"Proceedings," as it appears in Act 44, section 29, unambiguously refers to the initiation of a criminal prosecution against a defendant.*

 The initiation of criminal proceedings-through "a formal felony prosecution,

preliminary hearing, indictment, information or arraignment"—" 'is the starting point of our whole system of adversary criminal justice.' " *State v. Luton,* 83 Hawai'i 443, 449–50, 927 P.2d 844, 850–51 (1996) (footnotes omitted) (quoting *State v. Masaniai,* 63 Haw. 354, 360, 628 P.2d 1018, 1023 (1981) (following *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972))). In *Van den Berg,* analyzing an identically worded savings clause,[10] this court construed the term "proceedings" to mean the initiation of prosecution through a charging instrument and concluded that the amendments in question were therefore not available to the defendants:

> In the present case, the record indicates that [the defendants'] respective proceedings were "begun" before [the effective date of the amendments]: (1) Van den Berg was indicted on October 25, 1991 . . .; and (2) Karagianes was charged on July 8, 1992. . . . Because the proceedings involving [the defendants] *began prior to the effective date* of Act 239, the 1993 Statute *did not* apply to [them].

101 Hawai'i at 191, 65 P.3d at 138 (emphases in original).[11]

*Van den Berg* raised the question whether the 1990 or 1993 version of HRS § 134–6(a), involving use of a firearm in the commission of a felony, applied to the defendants' cases. *Id.* at 190–91, 65 P.3d at 137–38 (majority opinion). In *State v. Brantley,* 99 Hawai'i 463, 469, 56 P.3d 1252, 1258 (2002), this court had concluded, based on a reading of the *1993* version of the statute and its legislative history, that the legislature intended to create a separate offense in HRS § 134–6(a) (Supp.1993) and, therefore, that second de-

---

**10.** In *Van den Berg,* we noted that the act in question contained a savings clause that "expressly stated that the amendments to the act were *not* to 'affect rights and duties that matured, penalties that were incurred, and *proceedings that were begun, before its effective date.*' " *Id.* at 191, 65 P.3d at 138 (emphases in *Van den Berg* ) (quoting 1993 Haw. Sess. L. Act 239, § 2 at 419).

**11.** The dissent asserts that this court, "[in] *Van den Berg*[,] did not conclude that 'proceedings'

means 'criminal prosecutions.' " Dissenting opinion at 108 n.20, 165 P.3d at 1009 n.20. A careful reading of the language immediately *supra* reveals just such an implicit conclusion, which this court determined did not warrant further explication or analysis in light of the normally unambiguous meaning of the term as employed in the standard savings clause. Nothing in *Van den Berg's* treatment of the term "proceedings," certainly, renders it inapplicable as illustrative of how this court has treated the term in the past.

gree murder was *not* a lesser included offense, overruling *State v. Jumila,* 87 Hawai'i 1, 950 P.2d 1201 (1998), which was similarly based on an analysis of HRS § 134–6(a) (1993). *Van den Berg,* 101 Hawai'i at 191, 65 P.3d at 138. By contrast, in *Van den Berg,* this court concluded that the plain language of HRS § 134–6(a) (*Supp.1990* ) revealed no legislative intent to create a separate offense; accordingly, a defendant could not be convicted of both a violation of HRS § 134–6(a) (Supp.1990) and murder in the second degree. *Id.* at 192, 65 P.3d at 139. We then concluded that "proceedings" plainly meant the initiation of a criminal prosecution against both defendants,[12] and, noting that their "proceedings" had been initiated before the effective date of the 1993 amendments, held that the 1990 version of HRS § 134–6(a) applied to their cases and reversed their convictions of and sentences for the HRS § 134–6(a) offense. *Id.* at 191–92, 65 P.3d at 138–39.

The dissent argues that this court's interpretation in *Van den Berg* of "proceedings" to clearly betoken the initiation of a criminal prosecution against the defendant is inapposite to the present case because an ameliorative sentencing statute was not at issue. Dissenting opinion at 107–09 & n.24, 165 P.3d at 1008–10 & n.24. The dissent contends that it is the ameliorative nature of an

amendment that determines whether retroactive application is available to a defendant but fails to articulate how an unambiguous term can be rendered ambiguous merely because the statutory provision urged as applicable by the defendant is ameliorative.[13] *See* dissenting opinion at 107–09, 113–15, 165 P.3d at 1008–10, 1014–16 (citing *Koch,* 107 Hawai'i at 221–22, 112 P.3d at 75–76; *Avilla,* 69 Haw. at 509, 750 P.2d at 78; *State v. Von Geldern,* 64 Haw. 210, 212–15, 638 P.2d 319, 321–24 (1981)). In short, nothing in the *Van den Berg* analysis conflicts with our conclusion in that case that "proceedings" unambiguously commence with the initiation of a unitary criminal prosecution and the various proceedings subsumed within it.

### a. *Avilla demonstrates that the subject matter of an act can create ambiguity where normally none exists.*

It is not the *ameliorative* nature of a statutory provision that has prompted us in the past to construe the term "proceedings" as meaning something other than the initiation of a criminal prosecution but, rather, the unique subject matter of the act in question. *Avilla* is illustrative.

In *Avilla,* this court held that the ameliorative amendments to HRS § 804–4 (1985)

---

**12.** We noted in *Van den Berg* that Gary Karagianes, one of the defendants, was charged and tried prior to the effective date of the 1993 amendments, but sentenced after, and concluded that his "proceedings" had begun prior to the effective date, preventing application of the 1993 version of HRS § 134–6(a) to his case. 101 Hawai'i at 191, 65 P.3d at 138. Our analysis of the savings clause as it applied to Karagianes in *Van den Berg* is of particular import, moreover, because it represents this court's only opinion of which we are aware, aside from *Avilla,* 69 Haw. 509, 750 P.2d 78, discussed *infra,* in which a similar savings clause applied to legislation governing a criminal prosecution initiated *prior* to an amendment's effective date but in which a sentencing hearing was conducted *after* the effective date, mirroring the procedural stance of the present matter. *See Walker,* 106 Hawai'i at 4–5, 100 P.3d at 598–99 (defendant charged, pled no contest, and sentenced prior to Act 44's effective date); *Feliciano,* 103 Hawai'i at 274, 81 P.3d at 1189 (defendant indicted on September 6, 1994, sentenced on March 29, 1995, and amendments became effective July 20, 1998).

**13.** As discussed *infra* in section III.B.3.b, Act 44's savings clause applies to *all* of Act 44, including the many amendments to the state's drug laws that *increase* punishments and create *new* crimes and liabilities. Because those provisions are not ameliorative, the dissent's position begs the question whether the default, plain language interpretation of "proceedings" in *Van den Berg* applies to them or whether ambiguity continues to exist, despite the lack of any ameliorative provision at issue in those provisions. Our analysis results in a cleaner construct, to wit, (1) that the term "proceedings" in the standard savings clause means criminal prosecutions, *see Van den Berg,* 101 Hawai'i at 191, 65 P.3d at 138, and (2) that the same meaning applies to all sections of Act 44.

Moreover, in light of the foregoing analysis concerning the lack of ameliorative provisions at issue in *Van den Berg,* the dissent's assertion that we ignore this distinction, dissenting opinion at 108 n.20, 165 P.3d at 1009 n.20, is curious. We do not ignore the distinction; we simply do not conclude that it is dispositive.

provided for in Act 139 of 1987 [14]—allowing bail to convicted felons while on appeal—were available to a defendant who was indicted prior to June 5, 1987, the effective date of the amendments, but whose motion to continue bail pending appeal was heard and denied thereafter. 69 Haw. at 511, 513, 750 P.2d at 79, 81. We so held, not because the amendments were ameliorative,[15] but because the subject matter of Act 139—which pertained solely to bail, its availability, and related conditions—injected ambiguity into the term "proceedings." *Id.* at 512–13, 750 P.2d at 80. We noted that, while proceedings normally would mean "prosecutions," in the context of a statute concerned solely with *bail,* "proceedings" could also be interpreted as *bail* proceedings.[16] *Id.* at 512, 750 P.2d at 80. It was that ambiguity, and that ambiguity alone, that led us to the relevant committee reports in order to determine that the legislature's concerns in enacting the measure could be addressed by allowing Avilla to benefit from the amendments. *Id.* at 513, 750 P.2d at 80–81.

In *Avilla,* this court presupposed that the term "proceedings" in the savings clause normally meant "prosecutions." *Id.* at 512, 750

P.2d at 80. Insofar as Act 139 dealt exclusively with bail, the distinct nature of bail proceedings [17] was sufficient to inject ambiguity into the term, *Avilla,* 69 Haw. at 512, 750 P.2d at 80. Act 44, however, is comprehensive legislation enacted to address the epidemic of crystal methamphetamine use in the state, and includes sections increasing penalties for exposing children to the methamphetamine industry, inflicting injuries during its production, for sales of related drug paraphernalia, and for undertaking methamphetamine production near a park or a school. *See* 2004 Haw. Sess. L. Act 44, §§ 3, 4, and 8 at 206–10, 212. It amends penalties for promoting the drug. *Id.* §§ 5–7 at 210–11. It adopts a more treatment-oriented approach with respect to first-time offenders. *Id.* §§ 9–12 at 212–15. It addresses tort liability for drug dealers, insurance coverage for substance abuse, and civil commitment and treatment centers for substance abusers. *Id.* §§ 13, 15–22 at 216–19, 221–24. It supports citizen empowerment in combating the drug. *Id.* §§ 24–26 at 225. In contrast to Act 139 of the 1987 legislature at issue in *Avilla,* which dealt solely with bail, *see* 1987 Haw. Sess. L. Act 139, *passim* at 312–16, no

---

**14.** *See* 1987 Haw. Sess. L. Act 139, §§ 1–9 at 312–16. Act 139, section 10 contained a savings clause identical to the language in Act 44, section 29.

**15.** In this regard, the dissent oversimplifies the analysis in *Avilla* when it asserts that "[t]his court held that, in light of the ameliorative nature of the legislation, the term 'proceedings' included a bail proceeding occurring *after* the effective date" of the act in question, dissenting opinion at 103–04, 165 P.3d at 1004–05, citing *Avilla,* 69 Haw. at 513, 750 P.2d at 80–81. It was first necessary to find the term "proceedings" ambiguous before the ameliorative nature of the legislation could be relied upon as grounds for the holding. 69 Haw. at 512, 750 P.2d at 80.

**16.** The dissent mischaracterizes the discussion in *Avilla* as recognizing "multiple" meanings of "proceedings." Dissenting opinion at 105–06, 165 P.3d at 1006–07. There were, in fact, only two, the presumptive meaning of "prosecution" and the alternate "bail proceedings" created by the unique subject matter of the act. 69 Haw. at 512, 750 P.2d at 80 (" 'Proceedings,' as employed in the section of Act 139 in question, can mean prosecutions; but within the context of the statutes regulating the release of defendants on bail, it also can mean bail proceedings.").

**17.** Bail proceedings are indeed separate and distinct in nature. *See Miller,* 79 Hawai'i at 201, 900 P.2d at 777 ("When a convicted defendant is released on bail pending appeal, the circuit court is temporarily without jurisdiction under the probationary sentence that is the subject of the defendant's appeal; however, the circuit court may enforce or modify the conditions related to the defendant's release on bail pending appeal."); *Dawson v. Lanham,* 53 Haw. 76, 82–83, 488 P.2d 329, · 333 (1971) (bail requirements survive quashing of indictment without prejudice during pendency of prosecution's appeal); *Bates v. Ogata,* 52 Haw. 573, 575–76, 482 P.2d 153, 155–56 (1971) (A bail hearing, as a nonjury proceeding, is limited in its purpose and is not necessarily governed by "strict adherence to exclusionary rules of evidence" but, rather, "hearsay may support a finding if in the end 'it is the kind of evidence on which responsible persons are accustomed to rely in serious affairs.' ") (quoting *Nat'l Labor Relations Bd. v. Remington Rand, Inc.,* 94 F.2d 862, 873 (2d Cir.1938) (Hand, J.)); *Bates v. Hawkins,* 52 Haw. 463, 468–70, 478 P.2d 840, 843–44 (1970) ("[T]he bail hearing is not a determination of guilt or innocence but rather a determination of the preliminary issue of the right to a reasonable bail. Unless the accused insists otherwise, it may well be conducted somewhat informally, as upon affidavits.").

ambiguity is introduced by Act 44's subject matter that would lead us to question, as we did in *Avilla*, the standard interpretation of "proceedings" as the initiation of a criminal prosecution.[18] *Cf.* 69 Haw. at 512, 750 P.2d at 80.

*Avilla*, therefore, does not stand, as Reis contends, for the proposition that this court construes the language of the standard savings clause "in a manner that best effectuates the underlying legislative intent and purpose of that particular statute." We resort to legislative history only when there is an ambiguity in the plain language of the statute. *Valdivia*, 95 Hawai'i at 472, 24 P.3d at 668. Rather, *Avilla* stands for the unremarkable proposition that, if a statutory amendment on a single subject addresses proceedings other than criminal prosecutions—and the numerous hearings subsumed within criminal prosecutions, including hearings on evidentiary matters, motions for reconsideration, and sentencing—so as to give rise to an ambiguity, the defendant may benefit from the amendment if doing so would comport with the intent of the legislature as reflected in the amendment's underlying legislative history.

b. *The inclusion of a specific savings clause within the body of the amending statute demonstrates a clear legislative intent that the contents of the act do not apply retroactively.*

It is important to note that in both *Koch* and *Von Geldern*, upon which the dissent relies, *see* dissenting opinion at 113–15, 165 P.3d at 1014–16, *neither of the statutes at issue contained specific savings clauses*, a crucial fact that informed the discussion of the underlying legislative history and the ultimate conclusion in both cases that the ameliorative amendments could apply to the defendants.[19] *See Koch*, 107 Hawai'i at 221–22, 112 P.3d at 75–76, (citing 2002 Haw. Sess. L. Act 161 at 568–75); *Von Geldern*, 64 Haw. at 215, 638 P.2d at 323 (citing 1980 Haw. Sess. L. Act 284 at 544–46). In both cases, only the general savings clause, codified at HRS § 1–3 (1993),[20] presented an obstacle to retroactive application of the ameliorative amendments, and this court concluded that HRS § 1–3 " 'is only a rule of statutory construction and where legislative intent may be ascertained, it is no longer determinative.' " *Koch*, 107 Hawai'i at 222, 112 P.3d at 76 (quoting *Von Geldern*, 64 Haw. at 213, 638 P.2d at 322).

The foreign case law upon which the dissent relies for the purpose of bolstering its argument that ameliorative amendments must be applied retroactively, regardless of savings clauses, dissenting opinion at 120–22, 165 P.3d at 1021–23 (citing *People v. Schultz*, 435 Mich. 517, 460 N.W.2d 505 (1990); *State v. Cummings*, 386 N.W.2d 468 (N.D.1986); *People v. Oliver*, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197 (1956)), merely comports with our conclusion, appearing in *Von Geldern* and *Koch*, that the existence of a *general savings clause* does not prevent

---

**18.** We therefore also decline the dissent's invitation to *"assum[e], arguendo,* the term "proceedings" in the savings clause is viewed as ambiguous...." Dissenting opinion at 103, 165 P.3d at 1004.

**19.** The distinction between the intent expressed by the general savings clause, codified at HRS § 1–3, *see infra* note 20, and a specific savings clause enacted as part of particular legislation, such as Act 44, section 29, is crucial to the analysis. The dissent seeks to conflate the two, dissenting opinion at 115–17, 165 P.3d at 1016–17, in an attempt to reduce the express inclusion of a savings clause in Act 44—which by its plain language bars retroactive application of Act 44—to a nullity that has no more import than had it not been enacted and we were confronted only with the general savings clause contained in HRS § 1–3. *Id.* at 120–22, 165 P.3d at 1021–23

(quoting *Holiday v. United States*, 683 A.2d 61, 66 (D.C.1996)) (asserting "that state courts 'favor[] retroactive application of ameliorative sentencing legislation despite a general savings statute' " and that "the generic savings language in Section 29 is reflective of the 'general savings' provisions in HRS §§ 1–3 and 1–11.") (brackets in dissent). In the present matter, we are confronted with a *specific savings clause, i.e.*, a savings clause specifically and purposefully included in a particular piece of legislation as an expression of legislative intent regarding that legislation, and the import of the distinction becomes clear after analyzing the foreign case law upon which the dissent relies, *see infra.*

**20.** HRS § 1–3 provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended."

ameliorative amendments from being applied retroactively if such application would conform to specific legislative intent divined from the statute itself or from legislative history surrounding the specific statute in question.[21] *See Koch,* 107 Hawai'i at 222, 112 P.3d at 76; *Von Geldern,* 64 Haw. at 213–14, 638 P.2d at 322; *Schultz,* 460 N.W.2d at 511–12; *Cummings,* 386 N.W.2d at 472 (concluding "that, *unless otherwise indicated by the Legislature,* an ameliorating amendment to a criminal statute is reflective of the Legislature's determination that the lesser punishment is the appropriate penalty for the offense") (emphasis added); *Oliver,* 151 N.Y.S.2d 367, 134 N.E.2d at 201. None of the cases that the dissent cites implicate a *specific* savings clause enacted as part of the ameliorative amendments, as is found in Act 44, section 29, *see supra* note 1. Indeed, *Schultz, Cummings,* and *Oliver* all relied upon legislative *silence* regarding solely prospective application within the four corners of the legislation at issue in order to conclude retroactive application was implicitly endorsed by the ameliorative nature of the amendments. *See Schultz,* 460 N.W.2d at 509; *Cummings,* 386 N.W.2d at 470 (observing that the legislature did not "expressly state" whether the new law or the old law would apply to offenses committed before the amendments); *Oliver,* 151 N.Y.S.2d 367, 134 N.E.2d at 201–02.[22] By contrast, a specific savings clause, expressly contained within the body of the amending legislation, is clear evidence of legislative intent that the act "not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date," *i.e.,* that it not apply retroactively, eliminating any justification for further analysis. The dissent attempts to avoid the distinction when it asserts that, in the instant case, "[a]s was the case in *Von Geldern, Avilla,* and *Koch,* here there is simply no express indication that the legislature desired to prohibit retrospective effect to the remedial provisions," dissenting opinion at 116, 165 P.3d at 1017 (emphasis omitted), but, in doing so, ignores the very real and clear legislative intent represented by the inclusion of a specific savings clause barring retroactive application within the very body of Act 44.

## 2. A defendant "incurs" a penalty at the time of the commission of an offense.

 This court has not previously had occasion to define the plain meaning of the term "incurred," as employed in the standard savings clause. Nevertheless, courts in other jurisdictions have analyzed the phrase "penalties incurred" in the context of a savings clause and have concluded that a defendant incurs the penalty at the time of the commission of the offense.[23] *See McGranahan,* 206 N.W.2d at 91 (" 'The penalty is imposed by

21. Moreover, the dissent's reliance on *People v. Walker,* 81 N.Y.2d 661, 603 N.Y.S.2d 280, 623 N.E.2d 1 (1993), contributes little to the discussion, as *Walker* relies heavily on *Oliver* and merely restates the ameliorative doctrine already recognized in *Koch* and *Von Geldern* that, absent a specific savings clause, ameliorative amendments can be applied retroactively. *See id.* at 5–6.

22. The cases cited by the dissent contain other infirmities. In *Oliver,* the court applied ameliorative amendments to a defendant who had murdered his two-year-old brother as a fourteen-year old and was indicted three years prior to the amendments, ruling that the defendant could not be tried as an adult and, hence, could not be subject to the death penalty. In applying the new law, the court reasoned that, although the legislature had clearly provided that "[t]he repeal of any statute ... shall not affect ... any ... offense committed ... prior to the time such repeal takes effect," 151 N.Y.S.2d 367, 134 N.E.2d at 200–04, the ameliorative amendment nevertheless applied to the defendant, reasoning that the dissent characterized as "rewrit[ing] a statute and supply[ing] that which legislatures in their wisdom ... refuse to·enact," *id.* at 204 (Froessel, J., dissenting). Moreover, the appellate courts of Michigan have noted on several occasions "that [*People v.*] *Schultz* [, 435 Mich. 517, 460 N.W.2d 505 (1990) (plurality opinion),] did not garner a majority and did not represent binding precedent" even in Michigan, *People v. Doxey,* 263 Mich.App. 115, 687 N.W.2d 360, 363 (2004). *See also People v. Minnifield,* 2004 WL 1778790 at *6 (Mich.Ct.App.2004); *People v. Thomas,* 260 Mich.App. 450, 678 N.W.2d 631, 637 n. 1 (2004).

23. This is not to suggest that we presume the defendant guilty until proven innocent but, rather, that "[u]nder a saving clause or statute[,] the statutory rights and penalties are determined by the statute in effect at the time of the occurrence of the facts and may be enforced after repeal if the underlying facts are proved" later at trial. *Matthews,* 310 A.2d at 19.

the court after the fact of guilt is legally determined. It is incurred when the act for which the law prescribed the penalty is committed.' ") (quoting *In re Schneck,* 78 Kan. 207, 96 P. 43, 44–45 (1908)); *State v. Alley,* 263 A.2d 66, 69 (Me.1970) (" 'Punishment, penalty or forfeiture is 'incurred' . . . at the time the offence for which punishment is imposed is committed.' ") (ellipses in original) (quoting *Patrick v. Comm'r of Corr.,* 352 Mass. 666, 227 N.E.2d 348, 351 (1967)); *State v. Johnson,* 285 Md. 339, 402 A.2d 876, 880 (1979) (holding that a penalty is incurred "at the time of the commission of the offense"); *Commonwealth v. Benoit,* 346 Mass. 294, 191 N.E.2d 749, 751–52 (1963) (concluding that Massachusetts jurisprudence had settled since 1869 that a penalty is incurred at the time of the offense, "emphasiz[ing] incurrence as resulting from the offender's wrongful act as distinguished from any proceeding by public authority to impose the consequences of the wrongdoing" and that " '[p]unishment incurred' is not 'sentence imposed,' 'conviction found' or 'judgment entered' " and denying application of ameliorative amendments in effect after the date of the commission of the offense but before the issuance of the indictment) (quoting the applicable savings clause); *Schultz,* 460 N.W.2d at 510 ("[I]t is clear that the two defendants before this Court have incurred criminal liability for which they may be punished. . . ."); *Bilbrey,* 135 P.2d at 1000 (" 'hold[ing] . . . that th[e] defendant was subject to any penalty imposed by law for this crime on the date of its commission, and any subsequent statute repealing such penalty can only operate *prospectively,* and is applicable only to offenses committed after the statute took effect' ") (emphasis added) (quoting *Penn v. State,* 13 Okla.Crim. 367, 164 P. 992, 993 (1917)); *State v. Moore,* 192 Or. 39, 233 P.2d 253, 256–57 (1951) (concluding that an ameliorative amendment was unavailable to the defendant, insofar as he incurred the original penalty before the effective date of the new statute, reasoning that "to have 'incurred penalties' implies a time past or present as to the act and a future time as to the assessment of the penalty"); *State v. Petrucelli,* 156 Vt. 382, 592 A.2d 365, 366 (1991) ("As a result of the saving clause, a criminal irrevocably incurs liability at the time of the offense: not even the repeal of the statute imposing that liability affects that liability."); *State v. Senna,* 132 Vt. 428, 321 A.2d 5, 6 (1974) (" 'Criminal liability is incurred when the criminal act is committed.' ") (quoting *Matthews,* 310 A.2d at 20); *Matthews,* 310 A.2d at 21 ("Defendant's penalty was 'incurred' when he committed the act."). *But see State v. Tapp,* 26 Utah 2d 392, 490 P.2d 334, 336 (1971) (concluding that "no penalty is incurred until the defendant is convicted, judgment entered and sentence imposed," thereby allowing ameliorative amendments to be applied to a defendant who was tried and convicted, but not sentenced, prior to the effective date of the act).[24]

---

**24.** The dissent makes *Tapp* the centerpiece of its argument that a defendant incurs the penalty of an offense at the time the sentence is imposed. Dissenting opinion at 110–12, 165 P.3d at 1011–13. In *Tapp,* the defendant was indicted before the effective date of the ameliorative sentencing statute but tried, convicted, and sentenced thereafter. 490 P.2d at 335. Interestingly, the *Tapp* court implicitly concluded in analyzing a very similar savings clause that "proceedings" do not encompass sentencing proceedings when it concluded that "[t]he only way [the] statute [in question] can apply to the problem here . . . would be through its provision that '[t]he repeal of a statute does not . . . affect . . . any penalty incurred,' " 490 P.2d at 336 (quoting the applicable savings clause). In light of the fact that the defendant, like Reis, was sentenced *after* the effective date of the amendment, 490 P.2d at 335, the *Tapp* court implicitly *rejected* the proposition that a sentencing proceeding was a severable proceeding that could qualify the defendant for sentencing under the new law, be it termed retroactive or prospective application. We are at a loss, therefore, as to how that reasoning supports the dissent's position that a sentencing proceeding *can* be a separate proceeding for the purposes of the savings clause which *does* qualify the defendant for sentencing under the new law, as the dissent argues. *See* dissenting opinion at 111 n.29, 165 P.3d at 1012 n.29.

In any case, the *Tapp* court appears to conflate the meaning of "incur" and "impose" and cites no authority supporting the conclusion that a penalty is, *by its plain meaning,* "incurred" at the time of sentencing, *see* 490 P.2d at 337–38 (Henriod, J., dissenting). Moreover, as discussed *infra* in section III.B.3.a, application of the *Tapp* rule ultimately results in greater inequities among defendants.

In our view, the reasoning of the foregoing authority is compelling.[25] Accordingly, we hold that a defendant *incurs*, at the moment he or she commits the offense, liability for the criminal penalty in effect at the time of the commission of the offense.

3. *Our construction of "proceedings" and "incurred" ensures the consistent application of justice and avoids potential constitutional infirmity.*

To interpret "proceedings" to mean any discrete hearing pertaining to sentencing, motions for reconsideration, or appellate review would, in practice, mean that the savings clause would not operate to exclude a defendant's case unless all stages of a prosecution and all appeals were entirely concluded prior to the effective date of an amendment. Such a construction would vitiate the very reason for enacting a savings clause, to wit, (1) to delineate clearly which defendants fall under the new statute, in order to avoid producing inconsistent and unjust outcomes among defendants arising from the vagaries of the scheduling process, and (2) to avoid rendering portions of an act—Act 44 in the present matter—potentially unconstitutional as *ex post facto* measures. To construe penalties as having been "incurred" only at the moment of the imposition of sentence would similarly generate risks of inconsistency and constitutional infirmity.

a. *Avoiding inconsistent outcomes*

As the District of Columbia's highest court has reasoned, in considering the application of ameliorative sentencing amendments to a defendant who committed the charged offense prior to the amendment but was sentenced thereafter,

[w]e cannot say that a legislature could not rationally conclude that the best approach would be a purely prospective one, so that all defendants who committed crimes before the statute became effective would be treated equally. Otherwise, sentencings could get caught up in manipulations with unfair results overall. Some convicted felons, for example, might be able to arrange sentencing delays to take advantage of the new sentencing scheme, whereas others could not achieve the same result before less sympathetic judges. *But, more fundamentally, we see nothing irrational in a legislative conclusion that individuals should be punished in accordance with the sanctions in effect at the time the offense was committed, a viewpoint encompassed by the savings statutes themselves.*

*Holiday v. United States*, 683 A.2d 61, 72 (D.C.1996) (emphasis added). Adopting Reis's contention that "proceedings" is ambiguous and could be construed to include sentencing hearings as separate and distinct "proceedings" would invite just such an arbitrary application.

The result in *Tapp*, discussed *supra* in section III.B.2 & n. 24, illustrates the danger. In *Tapp*, the court reviewed precedent regarding when a penalty is "incurred," citing, *inter alia, State v. Miller*, 24 Utah 2d 1, 464 P.2d 844 (1970), and *Belt v. Turner*, 25 Utah 2d 230, 479 P.2d 791 (1971). In those related cases, the defendants, Miller and Belt, were each indicted for writing fraudulent checks prior to the effective date of the same ameliorative sentencing amendment reducing the penalty, but one of them, Belt, was convicted and sentenced *after* the effective date while the other, Miller, was convicted and sentenced *before*. "Miller was subject to a felony with incarceration in State Prison for upwards of 14 years, for doing the same thing, at the same time, under the same statute, with the same penalty, for the same

---

25. The dissent attempts to distinguish the preceding foreign case law by characterizing it as either (1) concerning preventing abatement of criminal prosecutions, (2) not involving ameliorative statutes, or (3) drawn from jurisdictions that require express legislative statements of retroactivity. Dissenting opinion at 112–13 & nn.30–32, 165 P.3d at 1013–14 & nn.30–32. Insofar as Act 44, section 29 by its plain language applies to every section of Act 44, *see supra* note 1, the interpretation of "incurred" also implicates preventing abatement of criminal prosecutions and must be analyzed in that light. Both the language of Act 44, section 29 and HRS § 1–3, *see supra* note 21, establish a presumption against retroactivity and, regardless of the ameliorative nature of amendments, none of the distinctions that the dissent urges, in the end, explain why the plain meaning of the term "incurred" should be equated with "imposed," particularly in light of the policy considerations discussed *infra* in section III.B.3.

guilt, while Belt was subject to only six months," despite the fact that it was Belt who violated parole and fled the state. *Tapp*, 490 P.2d at 337–38 (Henriod, J., dissenting) (asserting that the majority's conclusion "sanctions such discrimination under the illogical, unreasonable platitude and guise that 'time of sentence,'—not guilt . . .—is of the essence"). Moreover, the concerns expressed in *Holiday* have since been borne out in Utah, where the *Tapp* rule has been extended to allow the application of ameliorative sentencing amendments to defendants "even where the defendant's presentence misconduct resulted in the defendant's sentencing being delayed beyond the effective date of the amendments." *State v. Patience*, 944 P.2d 381, 385 (Utah Ct.App.1997) (citing, *inter alia, State v. Yates*, 918 P.2d 136, 139 (Utah Ct.App.1996) (noting that the "[Utah] supreme court has determined [that the] defendant's actions that delay sentencing are irrelevant" to receiving the benefits of the amended sanctions)).[26]

Nevertheless, the dissent insists that, by not applying the ameliorative provisions of Act 44, section 11 to Reis's case, it is we who are being "arbitrary and unjust" and that our decision runs counter to the general trend in other states. Dissenting opinion at 120–21, 123–24, 165 P.3d at 1021–22, 1024–25 (quoting *In re Estrada*, 63 Cal.2d 740, 48 Cal. Rptr. 172, 408 P.2d 948, 951 (1965)) (citing *Schultz*, 460 N.W.2d at 512; *Cummings*, 386 N.W.2d at 472; *Oliver*, 151 N.Y.S.2d 367, 134 N.E.2d at 203; *State v. Macarelli*, 118 R.I. 693, 375 A.2d 944, 947 (1977); *Holiday*, 683 A.2d at 66–68). Again, as discussed *supra* in section III.B.1.b, the cases upon which the dissent relies implicate only *general* savings clauses, which, as this court itself has concluded in *Von Geldern*, 64 Haw. at 213, 638 P.2d at 322, and *Koch*, 107 Hawai'i at 222, 112 P.3d at 76 (quoting *Von Geldern* ), represent a rule of statutory construction that may yield, and often does, to more express, specif-

ic intent regarding retroactive application of ameliorative amendments. *See Schultz*, 460 N.W.2d at 510 (concluding that the "historical and philosophical underpinnings" of the state's *general* savings clause did not support barring retroactive application of ameliorative amendments); *Cummings*, 386 N.W.2d at 471 (concluding that the applicable *general* savings clause "is but a canon of statutory construction to aid in interpreting statutes to ascertain legislative intent" and that "[i]t is not an end in itself"); *Oliver*, 151 N.Y.S.2d 367, 134 N.E.2d at 201 (concluding that the *general* savings clause has "been read by this court to provide merely a principle of construction, which governs in the absence of contrary intent") (quotation signals omitted); *Estrada*, 48 Cal.Rptr. 172, 408 P.2d at 952 (characterizing the *general* savings clause as "simply embod[ying] the general rule of construction . . . that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively[;] . . . [a] rule of construction, however, [that] is not a straightjacket"); *Macarelli*, 375 A.2d at 947 (relying on the unique wording of the *general* savings clause directing the courts to look to the record for legislative intent with regard to specific statutes to overcome the presumption against retroactive application).

▮ However, a default presumption against retroactive application remains alive and well both in our jurisprudence and in the foreign jurisdictions that the dissent cites. *See e.g., Taniguchi v. Assoc. of Apt. Owners of King Manor*, 114 Hawai'i 37, 48, 155 P.3d 1138, 1149 (2007) ("[I]t is well settled that 'all statutes are to be construed as having only a prospective operation unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language

---

**26.** Further to the foregoing, in *In re DeLong*, 93 Cal.App.4th 562, 113 Cal.Rptr.2d 385 (2001), discussed in the dissenting opinion at 109–10, 165 P.3d at 1010–11 and *infra* in note 28, the defendant twice moved successfully to have sentencing delayed, the second extension rescheduling her sentencing hearing to July 12, 2001, after the July 1, 2001 effective date of the ameliorative

amendments. *Id.* at 564–65, 113 Cal.Rptr.2d 385. She filed a motion for sentencing under the new law on July 2, 2002. *Id.* at 565, 113 Cal. Rptr.2d 385. By the reasoning in *DeLong*, similarly situated defendants who accepted their original pre-July 1, 2001 sentencing dates did not benefit from the new law.

used.' ") (quoting *Robinson v. Bailey*, 28 Haw. 462, 464 (1925)); *Kramer v. Ellett*, 108 Hawai'i 426, 432, 121 P.3d 406, 412 (2005) (quoting *Gap v. Puna Geothermal Venture*, 106 Hawai'i 325, 333, 104 P.3d 912, 920 (2004) (" 'Hawai'i statutory and case law discourage retroactive application of laws and rules in the absence of language showing that such operation was intended.' ")); *Von Geldern*, 64 Haw. at 215–16, 638 P.2d at 323 (clarifying that "we are not suggesting, as other courts have, *see, e.g.*, ... *Estrada*; ... *Oliver*, that whenever an amendatory statute is enacted ..., it must be presumed that the legislature intended for it to apply in every case where it could constitutionally apply" and reemphasizing that "[w]here the intention of the legislature with respect to retroactivity is incapable of ascertainment, the provisions of HRS § 1–3 will determine the statute's interpretation"); *Evangelatos v. Super. Court*, 44 Cal.3d 1188, 246 Cal.Rptr. 629, 642, 753 P.2d 585 (1988) (rejecting the characterization that *Estrada* eroded the strong presumption against retroactivity and asserting that "absen[t] ... an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature ... must have intended a retroactive application.").

Therefore, insofar as the presumption remains against retroactive application, the inclusion of a specific savings clause within an amendment—the polar opposite of an express retroactivity provision—must operate as clear evidence of the legislature's intention that the act in question should apply prospectively only. Indeed, where a specific savings clause has been included in amendatory legislation, the general trend among the states nationally is, in fact, *not* to apply the amendments retroactively, *even when they are ameliorative.*

In *People v. Floyd*, 31 Cal.4th 179, 1 Cal. Rptr.3d 885, 72 P.3d 820 (2003), the California Supreme Court refused to apply ameliorative amendments requiring probation and treatment for certain drug offenders where the amendments took effect before the defendant's conviction was final, relying on the language of a savings clause included as part of the amending statute.[27] 1 Cal.Rptr.3d at 886–87, 72 P.3d 820. It concluded that the rule of *Estrada* allowing retroactive application for ameliorative amendments did not apply when the amendments in question contained a *specific* savings clause, adding that "[w]e cannot embrace an interpretation that makes [the specific savings clause] mere surplusage." *Id.* at 887, 889, 72 P.3d 820.[28]

27. The savings clause read "[e]xcept as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively." 1 Cal.Rptr.3d at 886, 72 P.3d 820.

28. *Floyd* stands for the proposition that the presence of a *specific* savings clause embodies clear legislative intent that ameliorative amendments be unavailable to defendants who were already in the system prior to the effective date of the act in question but whose convictions were still not yet final after that date. *Id.* at 887–89, 72 P.3d 820. Therefore, insofar as the proceedings against Reis and Floyd began prior to the effective date of the relevant ameliorative amendments, the reasoning of the California Supreme Court is clearly not "inapposite" to our present analysis concerning the effect of the specific savings clause contained in Act 44, section 29, despite the dissent's attempts to reduce it to "mere surplusage," *id.* at 889, 72 P.3d 820. *See* dissenting opinion at 109, 115–16, 165 P.3d at 1010, 1016–17.

In an attempt to distinguish *Floyd*, the dissent cites a California appellate decision from two years earlier, *In re DeLong*, 93 Cal.App.4th 562,

113 Cal.Rptr.2d 385 (2001), discussing the same California state proposition. Dissenting opinion at 109–10, 165 P.3d at 1010–11. The conclusion in *DeLong*, however, that the amendments *were* available to the defendant hinged on the term "convicted," which the court concluded was ambiguous, leading the court to interpret the term so that it best comported with the underlying purpose of the amendment. 93 Cal.App.4th at 567–69, 113 Cal.Rptr.2d 385. The *DeLong* court also relied upon the fact that the ameliorative amendments were, by the express provisions of the proposition, also available to both individuals already sentenced to probation and those on parole, and the court could discern no rationale for denying the benefit of the new law to more recent defendants. *Id* at 569, 113 Cal.Rptr.2d 385. By contrast, in the present matter, we recognize no corresponding ambiguity in the term "proceedings" arising from Act 44's subject matter and do not confront in Act 44 a similarly broad extension of its ameliorative provisions to those other than newly-indicted defendants. The legislature, by including the specific savings clause in Act 44, section 29, expressed an intent that the ameliorative amendments be unavailable to defendants indicted before July 1, 2004.

Similarly, in *State v. Parker*, 871 So.2d 317 (La.2004), the lower appellate court attempted to apply to the defendant's case ameliorative amendments to the state's habitual offender statute—despite a *specific* savings clause that provided that "the provisions of this Act shall only have prospective effect"—by relying on the fact that the hearing in which the lower court "found" that the defendant was an habitual offender occurred after the amendment's effective date. 871 So.2d at 324. The Louisiana Supreme Court (1) refused to apply the ameliorative sentencing amendments (a) in light of the existence of a *specific* savings clause and (b) because it sought to prevent manipulation of the court schedule for the benefit of individual defendants and (2) noted that, "had the legislature intended the more lenient sentencing provisions to be immediately effective, it could have signified that intent in the Act." *Id.* at 322–23 (citing *State v. Sugasti*, 820 So.2d 518, 520–21 (La.2002); *State v. Dreaux*, 205 La. 387, 17 So.2d 559, 560 (1944)). The Washington Supreme Court reached the same conclusion in *State v. Ross*, 152 Wash.2d 220, 95 P.3d 1225 (2004), wherein it rejected the defendant's argument that state precedent required that ameliorative amendments apply retroactively. *Id.* at 1232, 1234. The court instead concluded that, by including a *specific* savings clause that provided that the amendments in question "apply to crimes committed on or after July 1, 2002," the state legislature had expressed the opposite intent, *i.e.*, that the ameliorative amendments applied only prospectively. *Id.* at 1234. Indeed, a number of other jurisdictions have refused to apply ameliorative amendments retroactively, *even when only general savings clauses were implicated. See, e.g., State v. Vineyard*, 96 Ariz. 76, 392 P.2d 30 (1964); *State v. Ismaaeel*, 840 A.2d 644, 655 (Del.Super.Ct.2004) (citing *Holiday*, 683 A.2d at 78–79, for its concern that to conclude otherwise would bestow a "windfall" on defendants whose sentencing proceedings had been delayed and concluding that "[j]ust as the State will not surprise a defendant with greater punishment in an *ex post facto* fashion, neither should a defendant feign surprise about the penalties that accompanied his [or her] conduct at the time"); *Castle v. State*, 330 So.2d 10 (Fla.1976); *Tellis v. State*, 84 Nev. 587, 445 P.2d 938 (1968); *Pollard v. State*, 521 P.2d 400 (Okla.Crim.App.1974); *State v. Kane*, 101 Wash.App. 607, 5 P.3d 741 (2000). Our decision today is not, therefore, out of step with the jurisprudence of other states, nor is our analysis of specific versus general savings clauses, despite the dissent's disparagement of the distinction, dissenting opinion at 120 n.51, 165 P.3d at 1021 n.51 (discussing the "so-called specific savings clause in Section 29").

b. *Preserving the constitutionality of the statute as a whole*

We must also interpret the language of the savings clause to preserve, if possible, the constitutionality of the statute. *Kamal*, 88 Hawai'i at 294, 966 P.2d at 606. Interpreting the savings clause such that *any* hearing conducted after the effective date could be considered a separate proceeding or that the defendant has not incurred the penalties set forth in Act 44 until the date sentence is imposed could expose some provisions of Act 44 to constitutional challenges.

This court has stated that

[t]he *ex post facto* clause of the United States Constitution[,] U.S. Const. art. I, § 10, cl. 1[,] prohibits states from enacting retrospective penal legislation.

In *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the United States Supreme Court was presented with the question "whether the application of a Texas statute, which was passed after respondent's crime and which allowed the reformation of an improper jury verdict in respondent's case, violate[d] the *Ex Post Facto* Clause...." *Id.* at 39 [110 S.Ct. 2715]. In summarizing the meaning of the *ex post facto* clause, the Court stated:

"It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute [ (1) ] which punishes as a crime an act previously committed, which was innocent when done[,(2) ] which makes more burdensome the punishment for a crime, after its commission, or [ (3) ] which deprives one charged with [a] crime of any defense available according to law at the

time when the act was committed, is prohibited as *ex post facto.*"

*Id.* at 42 [110 S.Ct. 2715] (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). "The *Beazell* formulation is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause: *Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.*" *Id.* (emphasis added); *see also State v. Von Geldern,* 64 Haw. 210, 212, 638 P.2d 319, 321 (1981) ("no new punitive measure may be applied to a crime already consummated.... Such legislation would be [an] ex post facto law[.]").

*State v. Nakata,* 76 Hawai'i at 375, 878 P.2d at 714 (emphasis in original) (footnote and some citations omitted) (some brackets added and some in original) (some underlining omitted in original).

By its plain language, the savings clause set forth in section 29 applies to *the entirety* of Act 44.[29] *See supra* note 1. Act 44, section 3 provides for enhanced penalties for exposing children to the process of manufacturing or distributing methamphetamine, as well as new penalties for injuries to others arising out of the manufacture or distribution of the drug. *See* 2004 Haw. Sess. L. Act 44, § 3 at 206–08. If "proceedings" and "incurred" are interpreted to allow application of Act 44 to a defendant charged before July 1, 2004 but sentenced thereafter, the provisions of Act 44, section 3, as an example, if properly pled and proven, could be susceptible to challenge as unconstitutional *ex post facto* measures because, at sentencing, they would (1) "punish[ ] as a crime an act previously committed, which was innocent when done[, or (2) ] ... make[ ] more burdensome

the punishment for a crime, after its commission," *Collins,* 497 U.S. at 42, 110 S.Ct. 2715.

4. *The legislature unambiguously intended that the provisions of Act 44 would not be available to defendants whose criminal prosecutions commenced prior to July 1, 2004.*

 The language of Act 44, section 29 does not present us with a situation "[w]here the intention of the legislature ... is incapable of ascertainment," *Von Geldern,* 64 Haw. at 215, 638 P.2d at 323. Rather, we must presume that the legislature knows the law when enacting statutes, *Agustin v. Dan Ostrow Constr. Co.,* 64 Haw. 80, 83, 636 P.2d 1348, 1351 (1981) ("the legislature is presumed to know the law when enacting statutes," including this court's interpretations of statutory language), and, hence, we must presume that the legislature, in enacting Act 44, was aware (1) of this court's interpretation, in *Van den Berg,* 101 Hawai'i at 191, 65 P.3d at 138, of the term "proceedings" as being synonymous with the initiation of a prosecution through the issuance of criminal charges and (2) of the crucial analytical role the absence of a savings clause played in *Koch* and *Von Geldern;* yet the legislature nevertheless chose to include a savings clause that plainly states that its provisions do not apply to proceedings begun prior to July 1, 2004.[30]

The preceding analysis, in sum, leads to the conclusion (1) that "proceedings," absent ambiguity arising from subject matter peculiar to the legislation, means criminal prosecutions of which sentencing hearings are an

---

**29.** The dissent recognizes the *ex post facto* danger of many of Act 44's provisions, a danger addressed by the inclusion of the savings clause, dissenting opinion at 123–24, 165 P.3d at 1024–25, but it appears to argue (1) that the savings clause does not apply uniformly to Act 44 and (2) that the interpretation of the terms of the clause can shift depending on the punitive or ameliorative nature of the amendment. Specifically, the dissent asserts that

[t]he Act, as noted previously, substantially addresses penalties related to drug possession, trafficking, and manufacturing. The savings

clause here was of a general nature obviously included to prevent the *ex post facto* application of those penalty provisions.

*Id.* at 124, 165 P.3d at 1025 (footnote omitted).

**30.** While there is no dispute that the legislature, in enacting Act 44, intended to give the lower courts more discretion in applying probation and access to drug treatment in lieu of imprisonment, that intention is not mutually exclusive with the act's savings clause, which, as demonstrated above, plainly affords that increased discretion prospectively to new violations occurring after July 1, 2004.

inseparable component [31] and (2) that the legislature did not intend to allow the sentencing provisions of Act 44, section 11 to apply "prospectively" to a sentencing hearing conducted after July 1, 2004, which resulted from a criminal prosecution initiated prior to that date. Therefore, we hold that the term "proceedings," as employed in Act 44, section 29, unambiguously means the initiation of a criminal prosecution against a defendant through a charging instrument and subsumes within its scope hearings and other procedural events that arise as a direct result of the initial charging instrument.

Hence, because Reis was charged on January 5 and April 13, 2004, prior to Act 44's effective date of July 1, 2004, the circuit court erred in applying Act 44's ameliorative amendments to her sentence by failing to observe the statutory command of Act 44, section 29, *Aplaca*, 96 Hawai'i at 22, 25 P.3d at 797. Furthermore, in keeping with this court's holdings in *Smith*, 103 Hawai'i at 234, 81 P.3d at 414, and *Walker*, 106 Hawai'i at 10, 100 P.3d at 604, and insofar as Reis conceded that she qualified as a repeat offender under HRS § 706–606.5 in light of a prior conviction of unauthorized control of a propelled vehicle, the circuit court could not sentence Reis to probation pursuant to HRS § 706–622.5 (Supp.2002), the first-time drug offender statute in effect at the time of the

commission of her offenses. Rather, the circuit court was required to apply HRS § 706–606.5 to sentence her to a mandatory minimum sentence of one year and eight months.

## IV. CONCLUSION

In light of the foregoing, we vacate the January 11, 2005 judgment and sentence of the circuit court, sentencing Reis to probation, and remand for resentencing as a repeat offender, pursuant to HRS § 706–606.5 (Supp.1999).[32]

Dissenting Opinion by ACOBA, J.

I respectfully dissent.

In my view, the majority in this case incorrectly applies the terms "proceedings" and "penalty incurred" in the generic savings clause in Section 29 of Act 44, 2004 Haw. Sess. L. Act 44 [hereinafter Act 44], § 29 [hereinafter Section 29], to preclude the application of Section 11 of Act 44 [hereinafter, Section 11] to Defendant–Appellee Susan Reis (Reis). In light of its ameliorative and remedial purpose of allowing first-time drug offenders to be sentenced to probation, Section 11 should be applied to Reis because (1) under a plain reading of Section 29, Reis's sentencing "proceeding" took place after the effective date of Act 44, (2) alternatively, and

**31.** The conclusion that sentencing is an inseparable stage in the progression of a unitary criminal prosecution is one shared by the United States Supreme Court. *See Bradley v. United States*, 410 U.S. 605, 609, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973) (noting that, "[i]n the legal sense, a prosecution terminates only when sentence is imposed" and concluding that a defendant who committed drug offenses prior to the effective date of an ameliorative sentencing amendment could not avail himself of its terms despite his conviction and sentencing occurring after the effect date of the amendment); *Warden, Lewisburg Penit. v. Marrero*, 417 U.S. 653, 657, 658, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974) (reiterating that, in *Bradley*, the Court "held that sentencing is part of the concept of 'prosecution'" and "reasoned that, since a ... decision to make an offender eligible for early parole is made at the time of entering a judgment of conviction, the decision was part of the sentence and therefore also part of the 'prosecution'"); *Holiday*, 683 A.2d at 72 ("[T]he [United States Supreme] Court confirmed in *Bradley* that sentencing is part of

the prosecution; the sentence is not part of a subsequent, severable proceeding.").

The dissent asserts that the preceding authority is "inapposite" because the savings clause at issue in *Bradley* and *Marrero* interpreted the term "prosecutions" and not "proceedings." Dissenting opinion at 102–03 n.4, 165 P.3d at 1003–04 n.4. Insofar as we have demonstrated that this court, in *Van den Berg*, interpreted "proceedings" to unambiguously betoken the initiation of criminal prosecutions, *see supra* at 87–88, 165 P.3d at 988–89, it follows that United States Supreme Court precedent interpreting "prosecutions" to include sentencing proceedings as unseverable proceedings part and parcel of any prosecution is far from inapposite but, rather, quite persuasive.

**32.** In light of our disposition, we need not reach the prosecution's argument, *see supra* section III.A.3, asserting that the separate nature of Reis's two drug-related offenses prevented the circuit court from sentencing her to probation as a first-time drug offender, pursuant to HRS § 706–622.5 (Supp.2004).

assuming, *arguendo*, the term "proceedings" is ambiguous, the fact that prosecution of the case was initiated prior to the effective date of the Act does not preclude application of Section 11 under *State v. Avilla*, 69 Haw. 509, 750 P.2d 78 (1988), and also (3) Reis's sentence may be treated as "a penalty incurred," after the effective date of the Act.

Ultimately, the majority's interpretive construct is unsound because "nothing is to be gained by imposing the more severe penalty," Wayne LaFave, 1 *Substantive Criminal Law*, § 2.5 (2007) [hereinafter, *Substantive Criminal Law*], that existed before the most recent legislative policy embodied in Section 11,—especially when our case law permits this court to confirm application of Section 11. Unfortunately, the real "losses" are suffered by those individuals whose opportunity for rehabilitation is again forfeited by a decision of this court, and by the legislature in its efforts to combat the methamphetamine or "ice" problem. The consequences will invariably have an adverse effect for such persons in their personal lives, for those around them, and for our community as a whole.

Such considerations have obviously been at the heart of our trial courts' application of Section 11 and I view their positions in these cases as legally correct and judicially appropriate. Thus, I would affirm the decision of the Honorable Steven Alm of the circuit court of the first circuit (the court), applying Section 11 and sentencing Reis to probation.

## I.

First, a plain reading of "proceedings" in Section 29 supports the view that the sentencing proceeding took place after the effective date of Act 44. In enacting Section 11, the legislature made clear, in the text of the Act, that a first-time drug offender *may be* "*sentenced to probation to undergo and complete a substance abuse treatment program … notwithstanding that the person would be subject to sentencing as a repeat offender* under [Hawai'i Revised Statutes (HRS) § ] 706–606.5[.]" Act 44, pt II, § 11 at 214 (emphases added). Section 11 allows the court discretion in sentencing first-time drug offenders to probation provided the court has determined certain criteria are met. *Id.*

These criteria include a determination that "the person is nonviolent" and that "[t]he person has been assessed by a certified substance abuse counselor to be in need of substance abuse treatment[.]" *Id.* Further, the court must also determine that "the person can benefit from substance abuse treatment" and if such criteria are met, "the person should not be incarcerated in order to protect the public." *Id.*

Act 44 announced the legislature's intention to give courts "more discretion … in sentencing" and stated that it "intend[ed] that a broader group" of drug offenders would be eligible to undergo drug treatment.

> The Task Force recommended that [2002 Haw. Sess. L.] Act 161 [hereinafter Act 161] should be amended to clear up the confusion regarding repeat offenders and the criteria for eligibility for drug treatment, and permit more discretion by the court in sentencing. *The legislature finds that diversion to drug treatment instead of prison is consistent with the solution to cure the ice epidemic. Accordingly, the legislature intends that a broader group of nonviolent drug offenders will be eligible for consideration for probation in order to undergo drug treatment. The purpose of this amendment is to provide the court with discretion in sentencing a first-time nonviolent drug offender to probation regardless of whether the offender has prior convictions.* The legislature strongly urges courts to consider transferring the most severely addicted offenders or addicted offenders with criminal histories to the jurisdiction of the drug court as a condition of being sentenced to probation.

Act 44, pt II, § 9 at 213 (emphasis added). In Act 44, Section 29 is a generic savings clause to the effect that "[t]his Act does not affect rights and duties that matured, *penalties that were incurred,* and *proceedings that were begun,* before its effective date." Act 44, pt IX, § 29 at 227 (emphasis added). Section 33 of the Act states that "[t]his Act shall take effect on July 1, 2004[.]" Act 44, pt IX, § 33 at 227.

There is no question that Section 11 is an ameliorative or remedial sentencing provi-

sion. An ameliorative statute can be defined as a "legislative change[ ] which ... reduce[s] the penalty for criminal behavior." *See Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, Comment, 121 U. Pa. L.Rev. 120, 120 (1972); *see also Black's Law Dictionary* 1319–20 (8th ed.2004) (defining a "remedial law" as "[a] law passed to correct or modify an existing law"). Act 44 is ameliorative in nature because it amends prior legislation requiring mandatory minimum sentences for persons who would be first-time nonviolent drug offenders and, instead, grants the court discretion to impose probation. Act 44, pt II, § 9 at 212–13. Where such provisions are concerned, "this court has taken the position that remedial legislation *is to be construed liberally in order to accomplish the purpose for which it was enacted.*" *State v. Von Geldern*, 64 Haw. 210, 215, 638 P.2d 319, 323 (1981) (emphasis added) (citing *Roe v. Doe*, 59 Haw. 259, 581 P.2d 310 (1978) (other citation omitted)).

## II.

In sentencing Reis, the court determined that the sentencing proceeding took place after the effective date of the Act, that the term proceedings may apply to a separate sentencing proceeding in a criminal case where the prosecution was begun before the effective date of the subject act, and the penalty, *i.e.,* sentence, was incurred after the effective date of the Act.

Here [Reis] was arrested, she pled, and *I think the plea was approximately a week before the Act 44 [effective] date. But the sentencing was well after that.* And there is no question the legislature on their word intended that a broader group of non-violent drug offenders will be eligible for consideration for probation in order to undergo drug treatment. *And the legislature wants to present more discretion by the*

[c]ourt *in sentencing. I believe that [Reis] fits into that criteria and both she and society will be better off with her getting dual-diagnosis care and the drug treatment that are set up for her rather than sentencing her as a repeat offender and sentencing her to prison.*

... I think [this case is] different from *[State v.] Walker* [, 106 Hawai'i 1, 100 P.3d 595 (2004),] because of the timing.... *Penalties were incurred after the effective date of Act 44. And proceedings that were begun,* the [c]ourt is of the belief that *when ... proceedings [are] being discussed, it is referring to the sentencing proceedings.*

... *And the prosecution in Avilla argued that proceedings that were begun should refer to the initiation of the prosecution. The [s]upreme [c]ourt disagreed. [It] said that proceedings can also refer to bail proceedings, and in Avilla, this was a post-conviction bail proceeding. So it occurred after the conviction, and that, I think, certainly comports with our situation in this case.*

*In addition, the [s]upreme [c]ourt also pointed out in Avilla that when there is a doubt ..., that an ambiguity exists. And in such case, the [c]ourt should look at the intent of the legislature* for guidance. And as I said before, the intent is clear, and that's to give the [c]ourt more discretion in sentencing.

(Emphases added.)

## III.

The court stated that it was "of the belief that when ... proceedings is being discussed [in Act 44], it is referring to sentencing proceedings." Consistent with the court's reasoning, the term proceeding in Section 29 includes "[a]n act or step that is part of a larger action." *Black's Law Dictionary* at 1241.[1] As such, a sentencing proceeding is

---

1. When construing a statute, " 'the fundamental starting point is the language of the statute itself' ... and 'where the statutory language is plain and unambiguous, [the appellate courts'] sole duty is to give effect to its plain and obvious meaning.' " *State v. Kalama*, 94 Hawai'i 60, 63, 8 P.3d 1224, 1228 (2000) (citations omitted). However, even when a statute is unambiguous,

the legislative history may be consulted to confirm our interpretation. *See Hawaii Elec. Light Co. v. Dep't. of Land & Natural Res.*, 102 Hawai'i 257, 270, 75 P.3d 160, 173 (2003) ("Although we ground our holding in the statute's plain language, we nonetheless note that its legislative history confirms our view." (Citing *State v. En-*

obviously an "act or step" within the larger criminal action and, thus, fits within the definition of proceeding.

Liberally construing the remedial provisions of Act 44 as we must, *see Von Geldern*, 64 Haw. at 215, 638 P.2d at 323, a plain reading of the statute permits the remedial provision to be applied in sentencing proceedings that were begun *after* the effective date of the Act.[2] Inasmuch as the sentencing proceeding was a separate step that took place *after* the effective date of Act 44, and in view of the liberal construction this court has said must be given to remedial legislation, *see id.*, the court could, as it did, treat Section 11 as incorporating a sentencing proceeding that occurred after the effective date of the Act.[3]

## IV.

Despite the foregoing, the majority maintains that the term " 'proceedings,' as it appears in Act 44, Section 29, *unambiguously* refers to the initiation of a criminal prosecu-

tion[,]" majority opinion at 87, 165 P.3d at 988 (emphasis added), and, as such, obviates application of the remedial provisions to Reis. However, applying a plain language approach, the term proceedings is not defined in Act 44 as the "initiation of a criminal prosecution," as the majority would have it. There is nothing on the face of the statute or in the legislative history with respect to Section 11 that states the legislature intended that "proceedings" would refer *only* to "the initiation of a criminal prosecution."

But *assuming, arguendo,* that a prosecution includes, *inter alia,* a sentencing proceeding, the majority's conclusion that " '*proceedings*,' ... subsumes ... other procedural events" does not follow. Majority opinion at 97–98, 165 P.3d at 998–99 (emphasis added). Although a sentencing "proceeding" is *part* of a prosecution, the majority erroneously equates the term "proceeding" with the term "criminal prosecution." *See* majority opinion at 97–98, 165 P.3d at 998–99. Manifestly, this conflicts with the plain meaning of "pro-

*trekin*, 98 Hawai'i 221, 227, 47 P.3d 336, 342 (2002).)).

**2.** This section addresses the majority's contention that " 'proceedings'... unambiguously refers to the initiation of criminal proceedings[,]" majority opinion at 87, 165 P.3d at 988, and as this section makes clear, under the plain language of the savings clause "proceedings" can refer to sentencing proceedings that were begun after the effective date of the statute.

**3.** In its statement of related cases, Plaintiff–Appellant State of Hawai'i (the prosecution) indicates that No. 27242, *State v. Cruz,* and No. 27271, *State v. Tactay,* are cases that relate to the issue of sentencing pursuant to Act 44's ameliorative provisions. In these cases the circuit courts held, as did Judge Alm, that the ameliorative provisions applied in sentencing hearings occurring after the effective date of Act 44.

In *Cruz*, pursuant to Act 44, the defendant was sentenced to five years probation for committing and being charged with drug offenses on June 9, 2004 and June 16, 2004, respectively, prior to the July 1, 2004 effective date of Act 44. With respect to sentencing, the Honorable Virginia Lea Crandall orally ruled:

[T]he court adopts the arguments set forth by the defense in its memorandum filed January 21, 2005, and the court finds *and concludes that it has the discretion with respect to this case to sentence the defendant to probation.* Accordingly, the court sentences Mr. Cruz to a term of probation of five years subject to the

following mandatory and special terms and conditions.

(Emphasis added.)

Likewise, in *Tactay*, the defendant was charged on June 30, 2004 for offenses occurring on June 21, 2004, prior to the July 1, 2004 effective date of Act 44. With respect to sentencing, the Honorable Michael A. Town sentenced the defendant pursuant to Act 44:

And to me this is clearly a proceeding under *[Avilla]*, the intent of "incur." I don't think they were that precise *and it's clear to me that the legislative intent was to give discretion, be it* "imposed," "incurred." I would hate someone's future to turn without—and I don't think—*I think there is not clear direction in ... Act 44 to do otherwise* so unless and until they tell me otherwise, or an appellate court.

And I think under HRS 1-1, my favorite statute, in the absence of clear statute or case law the [c]ourt should look at other states. Notwithstanding what—the good work [the prosecution] did, *I think that there's discretion on what "incurred" is versus "imposed."*

(Emphases added.)

The majority maintains that although "[t]he present opinion encompasses the arguments made by the parties in [*Cruz* and *Tactay*] ...[,] [w]e leave a discussion of the merits of those cases for another time." Majority opinion at 86 n.9, 165 P.3d at 987 n.9. Although the merits of *Cruz* and *Tactay* are not decided here, these cases indicate that at least three circuit court judges have interpreted the savings clause similarly.

ceedings," which, as discussed *supra*, includes an "[a]n act or step that is part of a larger action[,]" *Black's Law Dictionary* at 1241, such as a prosecution, *id.* at 1258 (defining "prosecution" as "[a] criminal proceeding in which an accused person is tried").

4. The majority attempts to bolster its conclusion with inapposite authority from the United States Supreme Court. *See* majority opinion at 98 n.31, 165 P.3d at 999 n.31 (stating that "[t]he conclusion that sentencing is an inseparable stage in the progression of a unitary criminal prosecution is one shared by the United States Supreme Court" (citations omitted)). Despite the majority's protestation, the fact that the U.S. Supreme Court interpreted the federal statute's reference to "prosecution" rather than "proceedings" is plain enough to establish the infirmity of the majority's contention.

Moreover, in *Bradley v. United States*, 410 U.S. 605, 606, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), cited by the majority, the Court interpreted the term "prosecution" (and *not* "proceedings") in the context of the particular savings clause of the Comprehensive Drug Abuse Prevention and Control Act of 1970. *Id.* at 607–10, 93 S.Ct. 1151. That savings clause specifically stated, *"Prosecutions for any violation of the law occurring prior to the effective date* of (the Act) *shall not be affected by the repeals or amendments* made by (it) ... or abated by reason thereof." *Id.* at 608, 93 S.Ct. 1151 (internal quotation marks and citation omitted) (ellipses in original) (emphases added). In interpreting the term "prosecutions" in its "familiar legal sense[,]" the Court stated that "a prosecution terminates only when sentence is imposed." *Id.* at 609, 93 S.Ct. 1151. The Court held that "[s]o long as sentence has not been imposed, then, [the specific savings clause of the Comprehensive Drug Abuse Prevention and Control Act of 1970] is to leave the prosecution unaffected" and, thus affirmed the petitioners' sentence under the mandatory minimum sentencing provisions. *Id.*

However, the new legislation involved in *Bradley* and this case each contain a savings clause completely distinguishable from one another. To reiterate, the specific savings clause in *Bradley* precluded the application of the new legislation to *"prosecutions* ... occurring prior to the effective date of (the Act)[.]" *Id.* at 608, 93 S.Ct. 1151 (internal quotation marks and citations omitted) (emphasis added). On the other hand, in this case, pursuant to Section 29, Act 44 "does not affect ... *proceedings* that were begun, before its effective date." Act 44, pt. IX, § 29 at 227. As discussed *supra*, "proceedings" and "prosecutions" are not synonymous. *Bradley* does not suggest that the they are. Thus, *Bradley* does not support the majority's position.

Likewise, *Warden, Lewisburg Penit. v. Marrero*, 417 U.S. 653, [653, 657, 658, 94 S.Ct. 2532] (1974), is inapposite. *See* majority opinion at 98 n.31, 165 P.3d at 999 n.31. *Marrero* did not disturb the holding in *Bradley*, but instead answered the "expressly reserved" question of

Thus, the majority's underlying premise— namely that " 'proceedings' ... means criminal prosecutions," majority opinion at 97–98, 165 P.3d at 998–99, is faulty.[4] Indeed, that a sentencing proceeding occurring after the enactment of Act 44 must be viewed as inclu-

*Bradley*, namely, whether the repeal of the parole ineligibility provision requiring that certain narcotics offenders be sentenced to mandatory minimum prison terms survived the repealer by the Comprehensive Drug Abuse and Prevention Control Act of 1970 so that a narcotics offender who had served more than one-third of a sentence imposed before the effective date of the new legislation remained ineligible for parole consideration under the general parole statute. The Court held that "[e]ligibility for parole under [the general parole statute] is ... determined at the time of sentencing and, under the teaching of *Bradley*, is part of the 'prosecution' saved by [the specific savings clause of the Comprehensive Drug Abuse Prevention and Control Act of 1970]." *Id.* at 658, 94 S.Ct. 2532. Thus, *Warden* does not aid in the interpretation of "proceedings" as employed in Section 29.

Finally, the majority's reliance on *Holiday v. United States*, 683 A.2d 61 (D.C.1996), also does not support its position. *See* majority opinion at 98 n.31, 165 P.3d at 999 n.31. Although the *Holiday* court stated that "the Court confirmed in *Bradley* that sentencing is part of the prosecution; the sentence is not part of a subsequent, severable proceeding[,]" *Holiday*, 683 A.2d at 72 (citing *Bradley*, 410 U.S. at 608, 93 S.Ct. 1151), *Bradley* did not expressly reach such a conclusion. Instead, as stated previously, the *Bradley* court concluded that under the specific savings clause of the Comprehensive Drug Abuse and Prevention Control Act of 1970, the prosecution is unaffected "[s]o long as the sentence has not been imposed[.]" 410 U.S. at 609, 93 S.Ct. 1151 (citations omitted). In other words, the *Bradley* court concluded that a prosecution includes sentencing, but did not express an opinion as to the severability of a sentencing proceeding. *Contra Holiday*, 683 A.2d at 72 (stating that the *Bradley* court concluded that "the sentence is not part of a subsequent, severable proceeding" (citing *Bradley*, 410 U.S. at 608, 93 S.Ct. 1151)).

In sum, *Bradley*, *Marrero*, and *Holiday* do not support the majority's conclusion that " 'proceedings,' as employed in Act 44, Section 29, means the initiation of a criminal prosecution[.]" Majority opinion at 97–98, 165 P.3d at 998–99. But the majority insists that the U.S. Supreme Court cases are "quite persuasive." *Id.* at 98 n.31, 165 P.3d at 999 n.31. This is not only belied by the facts of the cases themselves, as analyzed *supra*, but by the fact that the majority's entire basis for this assertion rests on an "implicit" conclusion that "the term 'proceedings' ... betoken[s] ... the initiation of a criminal prosecution[,]" that the majority draws from *State v. Van den Berg*, 101 Hawai'i 187, 65 P.3d 134 (2003), majority opinion at 85 n.5, 165 P.3d at 986 n.5, which never stated that " 'proceed-

sive of the remedial provision of Section 11 is accredited by this court's stated adherence to "the position that remedial legislation is to be construed liberally ... to accomplish the purpose for which it was enacted." *Von Geldern,* 64 Haw. at 215, 638 P.2d at 323.

## V.

### A.

Second, in the alternative, and *assuming, arguendo,* the term proceedings in a generic savings clause is viewed as ambiguous, as this court indicated in *Avilla,* Section 11 should apply to defendants sentenced after the effective date of Act 44.[5] As the court declared, *Avilla* is directly on point because it addressed an ameliorative statute, Act 139, 1987 Haw. Sess. L. Act 139 [hereinafter Act 139], that contained an identical savings clause. The savings clause in *Avilla,* like the one in the instant case, stated that it did "not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date." 69 Haw. at 511, 750 P.2d at 79.

The issue in *Avilla* was whether the savings clause precluded the defendant from petitioning for release on bail pursuant to HRS § 804–4, as amended on June 5, 1987. *Id.* at 509, 750 P.2d at 78. Prior to June 5, 1987, the statute in issue had read that "no bail shall be allowed pending appeal of a felony conviction where a sentence of imprisonment has been imposed." *Id.* at 510, 750 P.2d at 78. But "[i]n 1987 the legislature amended the statute to allow a criminal defendant who is sentenced to imprisonment to be released pending appeal in given circumstances." *Id.* at 510, 750 P.2d at 78–79.

Avilla was indicted prior to the passage of the Act. Like the majority approach in this case, the trial court concluded that the Act was "not applicable to this case because under Section 1[0], [the savings clause], the proceedings of July 1986 began before the effective date of the amendment of June 5, 1987." *Id.* at 511, 750 P.2d at 79.

Reading the savings clause at issue, this court found "no clue on how the legislature intended 'proceedings' to be read." *Id.* at 513, 750 P.2d at 80. *Avilla* noted that the relevant legislative committee reports related the amendment of the statute "was prompted by a concern for those criminal defendants whose appeals are eventually deemed meritorious." *Id.* Based on that concern, this court stated that it could not "conclude the legislature meant to deny every convicted criminal whose prosecution began before the amendment [of the statute] became effective an opportunity to seek release on bail pending appeal." *Id.* Further, "[a]n acceptance of the State's position would be inconsistent with the legislative purpose to prevent the injustice of a criminal defendant, particularly one whose release would pose no danger to others, being imprisoned while there is pending a substantial question of law or fact that casts doubt on the validity of his conviction." *Id.*

This court held that, in light of the remedial nature of the legislation, the term proceedings included a bail proceeding occurring *after* the effective date of Act 139, even though the criminal action involved had begun *before the effective date* of that act. *Id.* at 513, 750 P.2d at 80–81.[6] Thus, *Avilla* determined that *the trial court erred "when it ruled the Act did not apply to prosecutions [that were] begun before its effective date[.]"* *Id.* (emphasis added); *see id.* (finding that despite the savings clause, retroactive application was appropriate but that defendant could not be released on bail because he had not shown

---

ings'" "unambiguously betoken the initiation of criminal prosecutions[,]" *id.;* a conclusion that is absent in *Avilla* and foreign to the legislative intent behind section 11.

**5.** This part responds to the majority's argument that *Avilla* does not indicate that the term proceedings as used in the "standard savings clause" is ambiguous. Majority opinion at 90, 165 P.3d at 991.

**6.** This conclusion in *Avilla* directly contradicts the majority's assertion that "proceedings" refers to "the initiation of a criminal prosecution" because it is "unambiguous[.]" Majority opinion at 87, 165 P.3d at 988.

"he is not one likely to flee or pose a danger to others" as required by the statute).[7] Even the majority acknowledges that "[i]n *Avilla*, this court held that the ameliorative amendments ... were available to a defendant who was indicted ... prior to ... the effective date of the amendments." Majority opinion at 88–89, 165 P.3d at 989–99.

Therefore, assuming, *arguendo*, ambiguity in the term proceedings,[8] in the instant case, as in *Avilla*, we cannot "conclude the legislature meant to deny every [qualified] convicted criminal whose prosecution began before the amendment" of Section 11 the opportunity to seek probation. 69 Haw. at 513, 750 P.2d at 80. Consequently, as the trial court in *Avilla* erred in "rul[ing] that Act [139] did not apply to prosecutions [that were] begun before its effective date," *id.* at 513, 750 P.2d at 81, so does the majority err in ruling the

term "proceedings" must apply to a "unitary criminal prosecution" that were begun before the effective date of Act 44, majority opinion at 89 n.31, 165 P.3d at 999 n.31.

This is because such a ruling is "inconsistent with the [remedial] purpose," *Avilla*, 69 Haw. at 513, 750 P.2d at 80, of Section 11. Accordingly, the court was correct in determining that, consistent with *Avilla*, remedial provisions in acts that include identical savings clauses can be applied to prosecutions that were begun before the effective date of such acts, absent express legislative intent to the contrary,[9] such as that lacking in this case.

Moreover, if any ambiguity exists, despite the history of the legislature's ongoing explicit effort to divert first time drug offenders into drug rehabilitation programs, the rule of lenity commands the same result.

7. As Reis contends, if the legislature did not intend to apply the clause to "offenses" committed prior to the effective date of the statute, as the majority argues, the legislature could have expressly said so, as it has done in the past. For example, Reis cites to 1986 Haw. Sess. L. Act 314 [hereinafter Act 314], which expressly stated that "amendments made by [Act 314] to this Code do not apply to offenses committed before the effective date of Act 314." Reis properly distinguishes the clause in this case on the ground that the term "offenses committed" is omitted. Reis thus argues that "the ambiguous terms of 'proceedings that were begun' and 'penalties that were incurred' " are used.

The majority also misapplies *Van den Berg*, 101 Hawai'i 187, 65 P.3d 134, by arguing that *Van den Berg* "concluded that the plain language of the term 'proceedings' ... betokened ... the initiation of a criminal prosecution." Majority opinion at 85 n.5, 165 P.3d at 986 n.5 (citing *Van den Berg*, 101 Hawai'i at 191, 65 P.3d at 138) (emphasis added). The majority's response ignores an *explicit* interpretation of the term "proceedings" from *Avilla* in favor of a purported "plain language" interpretation of the term proceedings that *Van den Berg* itself never draws. *See infra*. But consistent with *Avilla*, "proceedings that were begun" may be interpreted as including sentencing proceedings that occurred after the effective date of the act, as noted above.

And, as discussed *infra*, both *State v. Koch*, 107 Hawai'i 215, 112 P.3d 69 (2005) and *Von Geldern* support retrospective application of ameliorative statutes where legislative intent is not expressly stated to the contrary. The majority states that "an unambiguous term [cannot] be rendered ambiguous merely because the statutory provision urged as applicable by the defendant is ameliora-

tive." Majority opinion at 88, 165 P.3d at 989. However, insofar as it implicates precedent of our jurisdiction, *Avilla* instructs that the term "proceedings[,]" when interpreted in light of an ameliorative amendment, can be viewed as ambiguous, whereas in a case involving a *non-remedial* statute such as in *Van den Berg*, the term may be viewed as unambiguous. The use of "offenses," not proceedings, simply indicates that if the legislature intended the savings clause to bar application of the amendments to offenses already committed, it could have done so expressly as it has done in the past.

8. The majority maintains that it is only by the dissent's "invitation" that " 'the term "proceedings" in the savings clause [could be] viewed as ambiguous.' " Majority opinion at 90 n.18, 165 P.3d at 991 n.18 (quoting dissenting opinion at 103, 165 P.3d at 1004) (internal quotation marks, brackets, and ellipses omitted). The majority misreads this dissent as inviting a discussion on ambiguity, however Reis and the court, as have other trial courts, relied on *Avilla* and a discussion on appeal would be wanting if not responsive to those issues. Nevertheless, the majority declines to grapple with the question of ambiguity when interpreting the savings clause language.

9. The majority's contention that the savings clause of Act 44 was "specifically and purposefully included ... as an expression of legislative intent" majority opinion at 90 n.19, 165 P.3d at 991 n.19, flies in the face of *Avilla*, which held that the *same language* did not bar the remedial provisions in that case from applying to prosecutions that began before the effective date of the act in *Avilla*.

*See State v. Aiwohi,* 109 Hawai'i 115, 129, 123 P.3d 1210, 1224 (2005) ("In the absence of clear statutory language, and with no legislative guidance vis-á-vis legislative history, the applicable doctrine is the rule of lenity." (Citation omitted.)); *State v. Shimabukuro,* 100 Hawai'i 324, 328, 60 P.3d 274, 278 (2002) ("Where a criminal statute is ambiguous, it is to be interpreted according to the rule of lenity." (Citing *State v. Kaakimaka,* 84 Hawai'i 280, 292, 933 P.2d 617, 629 (1997) ("Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (Citations omitted.)))). Hence, in this case, the generic savings clause appended to Act 44 must be construed against the prosecution with respect to Section 11, in consonance with the rule of lenity.

10. The majority's argument may be distilled as follows: (1) unlike *Avilla,* the savings clause at issue here is unambiguous because there is no "unique subject matter" at issue sufficient to "inject ambiguity" into the legislation, majority opinion at 89 & n.16, 165 P.3d at 990 & n.16; (2) *Avilla* "presupposed that the term 'proceedings' in the savings clause normally mean[s] 'prosecutions,' " majority opinion at 89, 165 P.3d at 990 (citing *Avilla,* 69 Haw. at 512, 750 P.2d at 80); (3) as such, there is no need to examine legislative history because "[w]e resort to legislative history only when there is an ambiguity in the plain language of the statute," majority opinion at 90, 165 P.3d at 991 (citing *State v. Valdivia,* 95 Hawai'i 465, 472, 24 P.3d 661, 668 (2001)); and (4) "[i]t is not the ameliorative nature of a statutory provision that has prompted us to construe the term 'proceedings' as meaning something other than the initiation of a criminal prosecution but, rather, the unique subject matter of the act in question." Majority opinion at 88, 165 P.3d at 989 (emphasis omitted).

11. As noted, *Avilla* concluded the identical savings clause was ambiguous. However here, the majority concludes that the same language is clear and "unambiguously refers to the initiation of a criminal prosecution[.]" Majority opinion at 87, 165 P.3d at 988. The majority provides no authority or basis for this conclusion and it cannot square with a principled approach to statutory construction.

12. Contrary to the majority's contention, majority opinion at 89 n.17, 165 P.3d at 990 n.17, the cases cited by it simply do not stand for the stand-alone proposition that "[b]ail proceedings[, in themselves,] are *indeed* separate and distinct in nature[,]" (emphasis added), and shed no authoritative light on whether a bail hearing per se should be considered a part of "proceedings" or not, without reference to the context in which the term is used. *Indeed, were what the majority*

**B.**

The majority's attempt to distinguish *Avilla* is inconsistent with *Avilla* itself.[10] Its first argument, *see supra* note 10, does not dispute that *Avilla* had an "identical" savings clause; however the majority maintains that *Avilla* is distinguishable because "the subject matter of Act 139 ... pertained solely to bail." Majority opinion at 89, 165 P.3d at 990. In that respect, the majority ignores the precedential weight of *Avilla,* paring the opinion down to the unsubstantiated proposition that "*Avilla* demonstrates that the [unique] subject matter of an act can create ambiguity where normally none exists." Majority opinion at 88, 165 P.3d at 989.[11] This assertion is unsupported by case law and *Avilla.*[12] *Avilla* said nothing about the

*contends true, the entire analysis in Avilla as to the term proceedings meaning separable bail proceedings would be superfluous. Avilla* makes no such assertion and, thus, does not cite to any of the cases the majority relies upon.

Additionally, the majority's cases cited in footnote 17 are not relevant on the grounds set forth in the following parentheticals. *See State v. Miller,* 79 Hawai'i 194, 201, 900 P.2d 770, 777 (1995) (holding that "[w]hen a convicted defendant is released on bail pending appeal, the circuit court is temporarily without jurisdiction under the probationary sentence that is the subject of the defendant's appeal; however, the circuit court may enforce or modify the conditions related to the defendant's release on bail pending appeal" (citation omitted)); *Dawson v. Lanham,* 53 Haw. 76, 82–83, 488 P.2d 329, 333 (1971) (ruling that bail requirements survive quashing of indictment without prejudice during pendency of prosecution's appeal *but not as discrete proceedings* ); *Bates v. Ogata,* 52 Haw. 573, 575–76, 482 P.2d 153, 155–56 (1971) (explaining that the full panoply of evidentiary rules regarding hearsay do not apply at bail hearings, but nowhere opining whether bail proceedings are separate and distinct, for the purpose of applying ameliorative measures (citing *Nat'l Labor Relations Bd. v. Remington Rand, Inc.,* 94 F.2d 862, 873 (2d Cir.1938) (involving an employee-association filing an unfair labor charge with petitioner National Labor Relations Board and discussing evidentiary matters as they apply to situations wholly unrelated to criminal matters or bail proceedings))); *Bates v. Hawkins,* 52 Haw. 463, 468–70, 478 P.2d 840, 843–44 (1970) (involving the charge of murder in the first degree where the subject centered on the burden of proof in bail proceedings, not bail proceedings in relation to other kinds of proceedings, or in relation to the entire adjudicative process, or as separate and distinct events).

"unique subject matter" of bail but plainly concluded that the word "proceedings" as used in Act 139 was subject to multiple interpretations.[13] 69 Haw. at 512, 750 P.2d at 80.

As to its second argument, *see supra* note 10, the majority misstates the case. There is no indication in *Avilla* that this court made any presupposition that "proceedings" generally or "normally" means prosecutions, as the majority maintains, see majority opinion at 89, 165 P.3d at 990, inasmuch as *Avilla* specifically stated that " '[p]roceedings,' as employed in the section of [the act] in question, can mean prosecutions; but within the context of statutes regulating the release of · defendants on bail, it can also mean bail proceedings." 69 Haw. at 512, 750 P.2d at 80 (emphases added). Because the term proceedings was broad enough to encompass several steps in a criminal action, this court determined that the savings clause was ambiguous.[14] *See id.*

Similarly, here, "proceedings" is a multifaceted term and *if* viewed as ambiguous, may reasonably be construed in remedial legislation to include sentencing proceedings, as the court decided. As such, the majority's far-reaching inference that the above statement from *Avilla* means proceedings are "normally" prosecutions, majority opinion at 89, 165 P.3d at 990, is, with all due respect,

erroneous as applied to remedial statutes, and conflicts with the rule of liberal construction. *Von Geldern,* 64 Haw. at 215, 638 P.2d at 323. Similar to the reasoning in *Avilla,* "within the context of statutes regulating" the discretion to afford probation, proceedings "can also mean" sentencing hearings. *Avilla,* 69 Haw. at 512, 750 P.2d at 80.

As to the majority's third argument, *see supra* note 10, consistent with *Avilla,* if proceedings in the savings clause is viewed as ambiguous, legislative history may be consulted in order to discern legislative intent.[15] *See Hawaii Providers Network, Inc. v. AIG Hawaii Ins. Co.,* 105 Hawai'i 362, 369, 98 P.3d 233, 240 (2004) (stating that "[i]f statutory language is ambiguous or doubt exists as to its meaning, courts may take legislative history into consideration in construing a statute" (internal quotation marks, brackets, and citation omitted)).[16] The majority appears to argue that the term proceedings is not ambiguous and, thus, the legislative history need not be consulted. *See* majority opinion at 90 n.18, 165 P.3d at 991, 991 n.18. But the majority does not quote a single opinion that defines proceeding as "the initiation of a criminal prosecution," *see* majority opinion at 87, 165 P.3d at 988, in support of

13. The majority contends that this dissent "mischaracterizes the discussion in *Avilla* as recognizing 'multiple' meanings of 'proceedings' " but that "[t]here were, in fact, only two" interpretations suggested in that case. Majority opinion at 89 n.16, 165 P.3d at 990 n.16. Not much more need be said than that "multiple" is defined as "consisting of, including, or involving more than one[,]" *Webster's Third New Int'l Dictionary* 1485 (1961). This dissent maintains what the majority apparently acknowledges that *if* there is "more than one" way to interpret "proceedings" as in *Avilla,* the term may be viewed as ambiguous, as this court in *Avilla* in fact did.

14. Consequently, to acknowledge ambiguity on one hand in *Avilla* and assert clarity on the other in this case, (*see* majority opinion at 90, 165 P.3d at 991, concluding that "the standard interpretation of 'proceedings' [is] the initiation of a criminal prosecution") in the same savings clause language is plainly inconsistent. Rather, under *Avilla,* the "standard interpretation" would be that the term "proceedings" is a multifaceted term. Here the court correctly decided that in light of the ameliorative nature of Section 11 a

sentencing hearing was a "proceeding." The majority's attempt to distinguish *Avilla* by maintaining that it was "the subject matter of Act 139—which pertained solely to bail" that "injected ambiguity into the term proceedings[,]" majority opinion at 89, 165 P.3d at 990, is simply without textual or historical support.

15. Again, despite the majority's attempt to portray this dissent as stating otherwise, it should be noted that this discussion revolves around an *alternative* reading of the statute as ambiguous.

16. As observed before, an examination of the legislative history surrounding Act 44 is appropriate whether or not the term proceeding is viewed as ambiguous. *See Entrekin,* 98 Hawai'i at 227, 47 P.3d at 342 (explaining that even where ambiguity does not exist, legislative history may consulted to "confirm[ ] our view"). Therefore, although this dissent's first position is grounded in a plain reading of the savings clause, the legislative history also supports the dissent's interpretation.

its position.[17] On the other hand, the legislative history behind section 11 supports a liberal interpretation of the remedial provision, not a narrow one.

As to the fourth argument, *see supra* note 10, the majority argues that this "dissent oversimplifies the analysis in *Avilla*" because it was not the "ameliorative nature" of the Act that caused the court to rule thusly but the "ambigui[ty]" in the term " 'proceedings.' " Majority opinion at 89 n.15, 165 P.3d at 990 n.15. Irrespective of whether the majority is willing to correctly acknowledge the rule of construction confirmed in *Von Geldern*, 64 Haw. at 215, 638 P.2d at 323, it cannot refute that if the term proceedings is ambiguous, such an ambiguity must be resolved in favor of the defendant, as it was in *Avilla* or must otherwise be resolved under the rule of lenity. The majority's decision to sever application of ameliorative statutes after a prosecution has begun, obviously contradicts *Avilla* inasmuch as the remedial statute was applied to Avilla even though his prosecution began prior to its effective date.

17. Indeed, the majority inconsistently employs the same approach it criticizes. When examining the cases from foreign jurisdictions, the majority conversely states that "ameliorative amendments [may be] . . . applied retroactively *if such application would conform to specific legislative intent divined from the statute itself or from legislative history* surrounding the specific statute in question." Majority opinion at 90–91, 165 P.3d at 991–92 (emphasis added). Thus, the majority would allow the consultation of legislative history in cases from other jurisdictions applying ameliorative amendments, but deems it improper to do so here.

18. The defendants in *Van den Berg* argued that based on the doctrine of stare decisis, *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998), should apply and their convictions should be reversed. 101 Hawai'i at 190, 65 P.3d at 137. The majority of this court explained that *Jumila's* holding, having been overruled by *State v. Brantley*, 99 Hawai'i 463, 56 P.3d 1252 (2002), was inapplicable. 101 Hawai'i at 191, 65 P.3d at 138. Although the *Van Den Berg* majority concluded that the statutes at issue in the defendants' cases were based on 1990 amendments to the relevant statute rather than the 1993 amendments addressed in *Jumila* and *Brantley*, "the core legal analysis in both *Brantley* and *Jumila* [was] still good law and applicable to the discussion in [the] case." *Id.*

*Avilla had been tried, convicted, and sentenced before the effective date of Act 139.* Accordingly, even if the term proceedings is viewed from the majority perspective, *i.e.,* as the initiation of a criminal prosecution, then *Avilla may still be read as applying the statutory act to prosecutions that were begun before the act's effective date.* 69 Haw. at 515, 750 P.2d at 81 (stating that "the Act [applied] to prosecutions begun before its effective date"). *Avilla* applied the new amendment because this court concluded that the term proceedings was *not* limited to the initiation of criminal "prosecutions" as the majority argues.

## VI.

Eschewing the precedential weight of *Avilla* in which remedial legislation was construed, the majority instead relies heavily upon *Van den Berg*,[18] which, as the majority notes, "raised the question whether the 1990 or 1993 version of HRS § 134–6(a), involving use of a firearm applied to the defendants' case." Majority opinion at 87, 165 P.3d at 988 (citing *Van den Berg*, 101 Hawai'i at 190–

Accordingly, the majority applied the reasoning of *Jumila* and *Brantley*, concluding that, like *Brantley*, there was also no "clear legislative intent to create an exception to the statutory prohibition" against being "convicted of more than one offense if one of those offenses is included within another." *Id.* at 192, 65 P.3d at 139. In addition to this reasoning the majority of this court also stated that "[a]dditionally . . . [the savings clause] expressly stated that the amendments to the act were not to 'affect rights and duties that matured, penalties that were incurred and proceedings that were begun prior to its effective date.' " *Id.* (quoting Act 239, § 2 at 419).

Thus, the *Van den Berg* majority, although disagreeing that the overruled *Jumila* case would dictate the outcome, applied the reasoning of *Jumila* and *Brantley* to reverse the defendants' convictions. *Id.* Accordingly, the majority of this court plainly responded to the defendants' arguments that *Jumila* dictated the result based on stare decisis, determined that the reasoning of *Jumila* and *Brantley* was "good law" and then mentioned that "*additionally* . . . [the defendants'] respective proceedings were 'begun' before [the effective date of the statute]." *Id.* (emphasis added).

In any event, because *Van den Berg*, does not involve an ameliorative statute, as the majority acknowledges, it is inapplicable here.

91, 65 P.3d at 137–38).[19] Although the statute at issue had a similar savings clause, *it did not involve any ameliorative provisions.*[20] The majority disregards [21] this dispositive distinction and is left with merely noting that "nothing in the *Van den Berg* analysis conflicts with our conclusion in that case that 'proceedings' unambiguously commence with the initiation of a unitary criminal prosecution[.]" [22] Majority opinion at 88, 165 P.3d at 989. The truth of the matter is that the question of the existence of a "unitary criminal prosecution" was never posed or decided in *Van den Berg*.[23] Therefore, as contrasted with *Koch, Avilla,* and *Von Geldern,* and the other cases explaining the doctrine of amelioration discussed in greater detail *infra, Van den Berg* cannot, in principle, be viewed as relevant or controlling.

The majority mischaracterizes this dissent as "fail[ing] to articulate how an unambiguous term can be rendered ambiguous merely because the statutory provision . . . is ameliorative." Majority opinion at 88, 165 P.3d at 989. As noted repeatedly in this dissent, the term proceedings on its face can plainly include a sentencing proceeding occurring after the effective date of Act 44. *Alternatively,* however, *if* the word proceedings is viewed as ambiguous—the majority acknowledging at least two interpretations of the term, majority opinion at 89 n.16, 165 P.3d at 990 n.16—proceedings can refer to different stages of a larger action, including the sentencing stage. In that case, the rationale in *Avilla* controls and a sentencing proceeding must be upheld, even if the underlying offense or charge occurred before the effective

---

**19.** The majority implies that my concurrence in *Brantley* interpreting "the same language" or savings clause, which stated that " 'the legislature's express direction that the amendment was not to be applied retroactively[,]' " is inconsistent with this dissent. Majority opinion at 85 n.7, 165 P.3d at 986 n.7 (quoting *Brantley,* 99 Hawai'i at 483, 56 P.3d 1252). In making this assertion, the majority *once again ignores our precedent establishing that an ameliorative amendment,* as in *Avilla* and the instant case, may apply retroactively, and a non-ameliorative sentencing statute may not, as in *Brantley.*

**20.** The majority incorrectly posits that "[b]ecause those provisions are not ameliorative, the dissent's position begs the question whether the default, plain language interpretation of 'proceedings' in *Van den Berg* applies . . . or whether ambiguity continues to exist," and asserts that its analysis results in a "cleaner construct[.]" Majority opinion at 88 n.13, 165 P.3d at 989 n.13. The majority repeatedly misstates the position here. As indicated before, a plain language construction validates the prospective event of the sentencing proceeding. This result is confirmed by legislative history. Assuming *arguendo,* however, if the contention is that the term proceeding is ambiguous, *Avilla* countenances the same result.

Also, contrary to the majority's assertion that its construct is "cleaner," majority opinion at 88 n.13, 165 P.3d at 989 n.13, its interpretation is, with all due respect, wrong. For, as noted *infra, Van den Berg* did not conclude that "proceedings" means "criminal prosecutions." This is further emphasized by the majority's pinpoint citation to the portion of *Van den Berg* which states that both defendants in that case had been tried and convicted prior to the effective date of the statute, 101 Hawai'i at 191, 65 P.3d at 138, which plainly does not indicate that " 'proceed-

ings' . . . means criminal prosecutions." Majority opinion at 88 n.13, 165 P.3d at 989 n.13. There is no virtue in a purportedly "cleaner" result bereft of precedential support, and achieved by ignoring *Avilla,* which involved an ameliorative amendment and an identical savings clause, and by relying on *Van den Berg,* which did not involve a remedial statute and, thus, is not germane.

**21.** The majority maintains that it does "not ignore the distinction" between an ameliorative and a non-ameliorative statute; it merely does "not conclude that it is dispositive." Majority opinion at 88 n.13, 165 P.3d at 989 n.13. However, this statement is patently incorrect. For the reasons noted in our case law, an ameliorative criminal statute must be read liberally and may be applied retroactively, while a non-ameliorative statute does not apply retroactively largely because of *ex post facto* concerns. That the majority ignores the dispositive import of this distinction could not be plainer.

**22.** This contention is a revision and recharacterization of the language in *Van den Berg* by the majority, and is not reflected in the *Van den Berg* opinion itself. Notwithstanding the majority's assertion that *Van den Berg* "plain[ly]" concluded the term "proceedings" meant "the initiation of a criminal prosecution[,]" majority opinion at 85 n.5, 165 P.3d at 986 n.5, the fact remains that *Van den Berg,* unlike *Avilla,* did not concern the interpretation of an ameliorative statute, as the majority acknowledges. *See supra.*

**23.** Based on this court's reasoning in *Avilla, see supra,* there is simply no a way to conform *Avilla* with the majority's interpretation of it and maintain any accuracy in applying that opinion.

date of Act 44. Hence, the majority can only reach its result by disregarding *Avilla's* precedential force and by resting on a case that had nothing to do with remedial legislation.[24]

In this case, Reis was not sentenced prior to the effective date of Act 44 and, consistent with *Avilla,* her sentencing hearing constitutes a proceeding within the meaning of the Act. Because the issue is not before us, we need not decide what other hearings might be encompassed by the term proceedings in various contexts. Nevertheless, as noted *infra, our own case law supports the application of ameliorative sentencing proceedings that become effective even while the case is on appeal.* See *Von Geldern,* 64 Haw. at 215, 638 P.2d at 324 (concluding that the ameliorative provisions apply because "[a] judgment is not final for this purpose while the case is on appeal or where the time for appeal has not yet run" (citation omitted)).

## VII.

Cases from other jurisdictions also support a liberal reading where ameliorative sentencing statutes are involved. For example, the majority points to *People v. Floyd,* 31 Cal.4th 179, 1 Cal.Rptr.3d 885, 72 P.3d 820 (2003), for the proposition disputed here that "the general trend among the states nationally is . . . not to apply" "a specific savings clause" "ret-

roactively[.]" Majority opinion at 94, 165 P.3d at 996. In *Floyd,* the California Supreme Court concluded the savings clause in Proposition 36[, The Substance Abuse and Crime Prevention Act of 2000,] ("[e]xcept as otherwise provided, the provisions of this act shall become effective July 1, 2001, and *its provisions shall be applied prospectively*[,]"), precluded application to Floyd who had already been sentenced. *Id.* at 821 (quoting Proposition 36 § 8, as approved by voters, Gen. Elec. (Nov. 7, 2000) (emphasis added)). However, *Floyd* is inapposite inasmuch as it addressed "whether Proposition.36 . . . applie[d] to defendants who were sentenced prior to the act's effective date of July 1, 2001, but whose judgments were not yet final as of that date." *Id.* (emphasis added). In contrast, here Reis was not sentenced prior to the effective date of Act 44, but *after* its effective date.

In a case more factually similar to ours, the California court of appeals, in *In re DeLong,* 93 Cal.App.4th 562, 564, 113 Cal. Rptr.2d 385 (2001), considered whether the same Proposition would apply to a defendant who had not yet been sentenced.[25] According to *DeLong,* "[t]he essential issue presented is the applicability of Proposition 36 to a defendant such as DeLong who *was adjudged guilty prior to the initiative's effec-*

---

24. The majority further states that its analysis of the savings clause in *Van den Berg* "is of particular import . . . because it represents this court's only opinion of which we are aware, *aside from Avilla,* . . . in which a similar savings clause applied to legislation governing a criminal proceeding *prior* to an amendment's effective date but in which a sentencing hearing was conducted *after* the effective date[.]" Majority opinion at 88 n.12, 165 P.3d at 989 n.12 (some emphasis added and some emphases in original). As conceded by the majority, *Avilla* interpreted an identical savings clause under the same order of proceedings. *Thus, Avilla controls rather than Van den Berg, because as the majority does not dispute, Van den Berg does not involve a remedial statute and Avilla does.*

25. The majority asserts that in *DeLong,* "the defendant twice moved successfully to have sentencing delayed" and that because "the second extension" was rescheduled after the "effective date of the ameliorative amendments[,]" the ameliorative amendments were applicable to the defendant. Majority opinion at 94 n.26, 165

P.3d at 995 n.26. The majority's argument here is unclear but it seems to suggest that there was something wrong with the California court of appeals' reasoning because "similarly situated defendants who accepted their original . . . sentencing dates could not benefit from the new law." *Id.*

First, it is inconsistent for the majority to rely on *Floyd, see* majority opinion at 94, 165 P.3d at 996 (discussing *Floyd,* 31 Cal.4th 179, 1 Cal. Rptr.3d 885, 72 P.3d 820), while at the same time rejecting *DeLong* inasmuch as both opinions discuss Proposition 36 and represent California's approach to interpreting sentencing clauses where ameliorative amendments are involved, but only one, *DeLong,* addresses a situation factually similar to the instant case. Second, a statute that reduces the penalty for a particular crime represents a legislative judgment that the prior penalty was too harsh and that the new penalty is sufficient. *See infra.* As such, there is nothing inconsistent about applying section 11 to defendants who are sentenced after the effective date of Act 44.

*tive date of July 1, 2001, but not sentenced until afterwards." Id.* (emphasis added).

The appeals court focused on the ameliorative provision of Proposition 36 that "any person convicted of a nonviolent drug possession offence shall receive probation." *Id.* at 565, 113 Cal.Rptr.2d 385. *DeLong* determined that the term "convicted" *"must be given a meaning that comports with the purpose of Proposition 36, which is aimed at diverting nonviolent defendants from incarceration into substance abuse programs"* and was *"intended to have a far-ranging application to nonviolent drug offenders." Id.* at 568–69, 113 Cal.Rptr.2d 385. (emphasis added). As such, that court concluded that " 'convicted' within the meaning [of the Proposition meant] adjudication of guilt and judgment thereon." *Id.* Reading the term liberally, it concluded that because *"DeLong ... was found guilty but had not yet been sentenced when the initiative took effect, ...* [she] had not yet been convicted as of that date and *[was] eligible for sentencing pursuant to Proposition 36."*[26] *Id.* at 570, 113 Cal.Rptr.2d 385 (emphases added).

Likewise, the New York Court of Appeals explained that where a defendant has not yet been sentenced, the case does not involve "retroactivity" in the classic sense.

*This appeal only involves application of the new law to prosecutions before sentence, not to final cases or cases on direct review.* Thus, it does not involve "retroactivity" in the classic sense *(see, Matter of Mulligan v. Murphy,* 14 N.Y.2d 223, 227, 250 N.Y.S.2d 412, 199 N.E.2d 496 [ (N.Y. 1964) ]; *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 [ (Ky. 1987) ] ). However, because the cases use the terms "retroactively" or "retroactive", for ease of discussion those terms will be used in the opinion.

*People v. Behlog,* 74 N.Y.2d 237, 544 N.Y.S.2d 804, 543 N.E.2d 69, 70 n. 1 (1989) (emphasis added). The New York courts have also said that "[w]hen, prior to sentencing, the Legislature makes a judgment that the crime a defendant has committed warrants a lesser punishment, the defendant may be punished in accordance with the new standards *because they represent society's most up-to-date evaluation of the nature of his offense." People v. Walker,* 81 N.Y.2d 661, 603 N.Y.S.2d 280, 623 N.E.2d 1, 5 (1993) (emphasis added). Thus, these courts, in line with our own principle requiring liberal construction of ameliorative sentencing statutes, have applied ameliorative amendments that become effective after a defendant has committed the offense or been convicted, and have not characterized such application as retroactive.

## VIII.

### A.

Third, the court, in interpreting the savings clause in Section 29 could, as it did,

26. The majority is wrong in maintaining that *DeLong* is distinguishable from the instant case. The majority maintains the conclusion in *DeLong* "hinged on the term 'convicted,' which the court concluded was ambiguous, leading the court to interpret the term so that it best comported with the underlying purpose of the amendment." Majority opinion at 95 n.28, 165 P.3d at 996 n.28 (citing *DeLong* 93 Cal.App.4th at 567–69, 113 Cal.Rptr.2d 385). As related above, the savings clause at issue stated that "[e]xcept as otherwise provided, the provisions of this act shall become effective July 1, 2001, and *its provisions shall be applied prospectively*[,]" *DeLong,* 93 Cal.App.4th at 566, 113 Cal.Rptr.2d 385 (emphasis added). Nevertheless, as the majority acknowledges, and to reiterate, the *DeLong* court stated that, "[a]pplying this rule in the instant case, we conclude ... use of the term 'convicted' must be given a meaning that comports with the purpose of Proposition 36, which is aimed at diverting nonviolent defendants from incarceration into substance abuse programs[,]" *id.* at 568–69, 113 Cal.

Rptr.2d 385, and, as such, *"should be interpreted so as to give the initiative a broad application*[,]" *id.* at 570, 113 Cal.Rptr.2d 385 (emphasis added).

Similarly here, where the ameliorative amendments are also to be interpreted liberally, where there is also a legislative intent aimed at steering eligible defendants into probation and treatment, and where there is also a term subject to more than one interpretation, *see* majority opinion at 89 n.16, 165 P.3d at 990 n.16, the same logic should apply, *i.e.,* the term "proceedings" should be interpreted "broadly," in line with the legislative intent, allowing section 11 to apply to Reis. In this framework, the majority's argument that there "is no corresponding ambiguity in the term 'proceedings' arising from Act 44's subject matter" and there is not "a similarly broad extension of [Act 44's] ameliorative provisions to those other than newly-indicted defendants[,]" majority opinion at 95 n.28, 165 P.3d at 996 n.28, is simply misplaced.

properly determine that the penalty, *i.e.*, sentence, was incurred after the effective date of the act and therefore Section 11 was applicable to Reis.[27] In interpreting ameliorative amendments, the phrase "penalties that were incurred" has been determined to mean penalties that a defendant faces *after* he has been convicted of a crime. Consequently, where ameliorative provisions are involved, some courts have found that no "penalty is incurred" until the defendant is sentenced.

For example, in *State v. Tapp*, 26 Utah 2d 392, 490 P.2d 334 (1971), under facts similar to the instant case, the Utah supreme court considered whether a savings clause precluded the trial judge from imposing a lesser sentence attributable to a statutory amendment adopted between the time the defendant was charged with possessing marijuana and the date of sentencing.[28] *Id.* at 336. The defendant argued that "he was entitled to the benefit of the lesser statutory penalty in effect at the time of trial, judgment and sentence, rather than the more severe penalty which was in effect at the time the offense was committed." *Id.* at 335. The Utah court, like the majority here, focused on the language of a similar savings clause but con-

cluded, instead, that "[t]he only way that statute can apply to the problem here involved" would be through its "penalty incurred" provision. *Id.* at 336.

*Tapp* decided that the savings clause did not bar the application of the ameliorative sentencing statute because "[i]nasmuch as *no penalty is incurred until the defendant is convicted, judgment entered and sentence imposed, that statute does not affect the propriety of [retroactive application of the ameliorative statute] in accordance with the law as it exists at that time*" and "*if the statute reducing the penalty has become effective before the sentence ... the defendant is entitled to the lesser penalty as provided by the law at the time of the judgment and sentence.*"[29] *Id.* (emphases added). The majority's assertion that *Tapp* "cites no authority supporting its conclusion that a penalty is, by its plain meaning, 'incurred' at the time of sentencing[,]" majority opinion at 92, n.24, 165 P.3d at 993 n.24 (emphasis omitted), is simply not true. In fact, the *Tapp* court relies heavily on case law. It stated that:

There are several considerations which in our minds tend to support our conclusion

---

**27.** This part responds to the majority's argument that "[a] defendant 'incurs' a penalty at the time of the commission of an offense." Majority opinion at 91, 165 P.3d at 992.

**28.** The similar savings clause stated that "[t]he repeal of a statute does not ... affect any right which has accrued, any duty imposed, any penalty incurred, or any action or proceeding commenced under or by virtue of the statute repealed." *Tapp*, 490 P.2d at 336.

**29.** The majority attempts to distinguish *Tapp* by stating that "[i]n *Tapp*, the defendant was indicted before the effective date of the ameliorative sentencing statute but tried, convicted, and sentenced thereafter[,]" majority opinion at 92 n.24, 165 P.3d at 993 n.24. However, according to the majority, a penalty is incurred at the time an offense is committed, majority opinion at 91, 165 P.3d at 992, and a proceeding begins when a prosecution is initiated, majority opinion at 87, 165 P.3d at 988. Thus, that the *Tapp* defendant was "tried, convicted, and sentenced" after the effective date of the statute should have no bearing on the majority's approach as the defendant in *Tapp* committed the offense and was indicted prior to the effective date of the ameliorative statute.

The majority states that "[i]nterestingly, the *Tapp* court implicitly concluded in analyzing a very similar savings clause that 'proceedings' do not encompass sentencing proceedings when it concluded that '[t]he only way [the] statute [in question] can apply to the problem here ... would be through its' penalty incurred provision." Majority opinion at 92 n.24, 165 P.3d at 993 n.24 (quoting *Tapp*, 490 P.2d at 336). However, this statement appears to support this dissent's position that "a sentencing proceeding can be a separate proceeding for the purposes of the savings clause." Majority opinion at 92 n.24, 165 P.3d at 993 n.24.

Puzzlingly, the majority then maintains that "the *Tapp* court implicitly rejected the proposition that a sentencing proceeding was a severable proceeding that could qualify the defendant for sentencing under the new law, be it termed retroactive or prospective application." *Id.* (emphasis omitted) However, inasmuch as the *Tapp* court expressly stated that "[i]f a statute reducing the penalty has been effective before the sentenc[ing proceeding], as in this case, the defendant is entitled to the lesser penalty as provided by the law at the time of the judgment and sentence[,]" it is unclear then why the majority is "at a loss ... as to how [the above] reasoning supports the dissent's position." Majority opinion at 92 n.24, 165 P.3d at 993 n.24.

that *where an enactment reducing the penalty for an offense has become effective prior to the conviction, a defendant is entitled to the benefit thereof by having [a] penalty imposed in accordance with the law at the time of the sentence.* The first of these is that it is the prerogative of the legislature, expressing the will of the people, to fix the penalties for crimes; *and the courts should give effect to the enactment and the effective date thereof as so declared.* There are some other fundamental principles [i]ngrained in our law which, though not directly controlling on the problem at hand, are generally in harmony with the policy considerations which lead to the conclusion we have reached herein. *One of these is that to insist on the prior existing harsher penalty is a refusal to accept and keep abreast of the process which has been continuing over the years of ameliorating and modifying the treatment of antisocial behavior by changing the emphasis from vengeance and punishment to treatment and rehabilitation.* In the same tenor are the time-honored rules of the criminal law generally favorable to one accused of crime: that in case of doubt or uncertainty as to the degree of crime, he is entitled to the lesser; and correlated thereto: that as to an alternative between a severe or a lenient punishment, he is entitled to the latter.

*Tapp,* 490 P.2d at 335–36 (footnotes omitted) (emphases added) (citing *In re Falk,* 64

Cal.2d 684, 51 Cal.Rptr. 279, 414 P.2d 407 (1966); *In re Ring,* 64 Cal.2d 450, 50 Cal. Rptr. 530, 413 P.2d 130 (1966); *In re Estrada,* 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (1965); *In re Fink,* 67 Cal.2d 692, 63 Cal.Rptr. 369, 433 P.2d 161 (1967); *State v. Pardon,* 272 N.C. 72, 157 S.E.2d 698 (1967) (other citations omitted)).

### B.

The same rationale is applicable here and this court can "give effect to the enactment and the effective date thereof as so declared" and apply the statute in effect at the time of Reis's sentencing. *Id.* Factually, like the defendant in *Tapp,* Reis was not sentenced until after the effective date of the statute and, as such, under *Tapp's* approach to ameliorative statutes, no penalty had been incurred until after the statute's effective date. The savings clause in Section 29, then, would not preclude the application of ameliorative sentencing provisions.

The majority cites to several cases, arguing that "courts in other jurisdictions have analyzed the phrase 'penalties incurred' in the context of a savings clause and have concluded that a defendant incurs the penalty at the time of the commission of the offense." Majority opinion at 91–92, 165 P.3d at 992–93. However, these cases are plainly distinguishable because the cases concern preventing abatement of criminal prosecutions,[30] or do not involve ameliorative statutes [31] or unlike our case law, *see Koch,* 107

30. Some of the cases address the very reason that savings clauses were created—to prevent the abatement of criminal prosecutions that occurred at common law where a statute was amended or repealed. *See infra; State v. McGranahan* 206 N.W.2d 88, 90 (Iowa 1973) (where defendant, charged with sale of marijuana under a statute that was repealed and replaced after he was charged, argued that "the prior repeal of the law under which he was charged vitiated his conviction" the Iowa court obviously held that the claim was "without merit" as this is exactly the situation in which savings clauses are designed to guard against); *Bilbrey v. State,* 76 Okla.Crim. 249, 135 P.2d 999, 1000 (1943) (concluding that the defendant's argument that the court lacked jurisdiction because "the repeal of a penal statute without a saving clause operates as a bar to any further prosecution under the repealed statute" was inapplicable where, as in that case, a savings clause existed); *Commonwealth v. Benoit,* 346 Mass. 294, 191 N.E.2d 749

(1963) (stating that the issue was whether the repeal of the legislation under which defendants were charged invalidated their indictments and concluding that the savings clause prevented such an action); *State v. Senna,* 132 Vt. 428, 321 A.2d 5, 5 (1974) (allowing the defendant to be prosecuted although the statute was repealed and redefined so that there was no longer a "penalty for the crime of breach of peace by assault").

31. The second category of cases relied on by the majority does not involve ameliorative statutes and so call for different modes of construction and policy considerations. *See supra.* For example, the majority relies on *State v. Matthews,* 131 Vt. 521, 310 A.2d 17, 20 (1973), which concludes that in the "absence of an amendment *reducing the penalty or punishment ...* we hold that the legislative intent of the saving statute ... was to preserve the right to prosecution and

Hawai'i at 222, 112 P.3d at 76 (legislative intent to give retroactive effect may be express or implied), require an express legislative statement of retroactivity.[32] The majority does nothing to dispute the foregoing, only stating that "none of the[se] distinctions that the dissent urges, in the end, explain why . . . the term 'incurred' should be equated with 'imposed[.]'" Majority opinion at 93 n.25, 165 P.3d at 994 n.25. However, as noted throughout this opinion, it is the context that gives meaning to the savings clause, i.e., where an ameliorative statute is at issue, the savings clause is to be read liberally in terms of its purpose. Thus, inasmuch as the context of each of these cases is inapposite to the present case, they furnish no support for the majority.

## IX.

### A.

Even though not necessary to validate Reis's sentencing proceeding beyond the aforesaid grounds, it may be observed that if the term proceeding is viewed as "the initiation of a criminal prosecution against a de-

fendant[,]" as the majority insists, majority opinion at 87, 165 P.3d at 988, the retroactive application of such a remedial statute, if within the legal discretion of the court, is authorized by case law in this jurisdiction.[33] For example, as noted above, in *Avilla, this court held that an ameliorative statute may be applied to prosecutions that were begun before the effective date of the act.* 69 Haw. at 509, 750 P.2d at 78. The majority does not dispute that *Avilla* retroactively applied the amendment even though "the initiation of [the] criminal prosecution[,]" majority opinion at 87, 165 P.3d at 988, had already taken place and despite the inclusion of the same savings clause used in Act 44.

Aside from *Avilla,* this court has expressly authorized the retroactive application of ameliorative amendments, i.e., to prosecutions preceding the effective date of the amendment, notwithstanding the absence of a specific, expressed legislative intent. In *Von Geldern,* a criminal case where the charge was promotion of a dangerous drug, this court distinguished the application of penalty-increasing statutes from ameliorative

sentence in this case, and not to exculpate him by reason of the repeal of the criminal statute[.]" (Emphasis added.) *See also State v. Petrucelli,* 156 Vt. 382, 592 A.2d 365, 366 (1991) (holding that an amendment which lengthened the statute of limitations for sexual assault from three to six years and became effective before the statute of limitations had run against the defendant *was* retroactively applicable because defendants do not acquire a right to the statute of limitations in effect at the time an offense is committed); *State v. Moore,* 192 Or. 39, 233 P.2d 253, 255 (1951) (involving the repeal of the Habitual Offender Statute and replacement with a new code which required that an "information should be filed within two years after [the defendant's] last conviction" which was not required under the old law).

**32.** The final category of inapplicable cases involves those jurisdictions that allow retroactive application of ameliorative amendments only where the legislature explicitly requires it. *See State v. Johnson,* 285 Md. 339, 402 A.2d 876, 879 (1979) (stating that "a general savings statute preserves penalties imposed under prior law except where a subsequent repealing act manifests the legislative intention to the contrary"); *See State v. Alley,* 263 A.2d 66, 68 (Me.1970) (interpreting applicable savings clause as precluding application of ameliorative amendment where defendant was tried, convicted and sentenced

prior to the effective date of the ameliorative statute).

**33.** The majority maintains that "it is important to emphasize that Reis herself does not characterize her argument as implicating retroactive application" and that it only discusses such application because of "the dissent's insistence on arguing that the provisions of Act 44, section 11 should be applied retroactively." Majority opinion at 85, 165 P.3d at 986. Inconsistently, however, the majority acknowledges that "although Reis does not employ the term 'retroactive' in her arguments ... [because] she does seek to apply Act 44's amendments to events that occurred prior to the Act's effective date, we can construe *an implicit argument for retroactive application.*" Majority opinion at 86 n.8, 165 P.3d at 987 n.8 (emphasis added).

Further, as Reis relies predominantly on *Avilla,* a case which, as discussed, allows for the retroactive application of an ameliorative amendment, the discussion of retroactivity is entirely germane. *See State v. Heapy,* 113 Hawai'i 283, 304, 151 P.3d 764, 785 (2007) (explaining that where case law is "part and parcel" of the issue raised, discussion of such case law is germane). Finally, the prosecution, recognizing the import of our ameliorative provision cases, argues against the retrospective effect to be given our case law. *See infra* note 34.

amendments. With regard to penalty-increasing amendments, it said that "no new punitive measure may be applied to a crime already consummated, where its application would work to the detriment or material disadvantage of the wrongdoer. Such legislation would be *ex post facto* law as to the offender." *Von Geldern*, 64 Haw. at 212, 638 P.2d at 321 (emphasis added).

However, the ameliorative statute, in that case, 1980 Haw. Sess. L. Act 284 [hereinafter Act 284], had become effective on June 16, 1980,[34] and was held applicable to a defendant who had filed his notice of appeal on August 31, 1979, after the effective date of Act 284. *Id.* This court said Act 284 "added a subsection to the mandatory minimum sentence statute ... to provide the sentencing court with the discretionary authority to impose a lesser mandatory minimum sentence where the court found strong mitigating circumstances to warrant such action." *Id.* It was declared that Act 284 is "ameliorative in its intent and effect and its application ... would neither be detrimental nor materially disadvantageous to the defendant[,]" because "[i]t authorizes the trial court to impose less than the mandatory minimum sentence of imprisonment where strong mitigating circumstances are shown to exist." *Id.* at 213, 638 P.2d at 322.

*Von Geldern* stated that, "[t]hat being the case, the only possible obstacle to its application in this case would be HRS [§ ] 1–3 which provides that '(n)o law has any retrospective operation, unless otherwise expressed or obviously intended.'" *Id.* (citing *Oleson v. Borthwick*, 33 Haw. 766 (1936) (other citation omitted)). According to this court, however, HRS § 1–3 is only a "rule of statutory construction and where the legisla-

tive intent may be ascertained, it is no longer determinative." *Id.* Also, although it discerned that there was "*nothing in the language of Act 284 to indicate, one way or the other, that its ameliorative provisions may be applied retrospectively,*"[35] this court nevertheless concluded that "*such application where they may still be applied was obviously the intent of the legislature.*" *Id.* at 213–14, 638 P.2d at 322 (emphases added).

It was concluded that "[t]he legislature, we think, has thus established a pattern of conduct evidencing an inclination to allow the trial court in the exercise of its sound discretion to apply, in individualized circumstances, the 'more enlightened sentencing provisions' of the Code, even where the crime was committed before its effective date." *Id.* at 214–15, 638 P.2d at 323. Consequently, although the defendant had been *convicted and sentenced prior to the effective date of Act 284, because the defendant's appeal was still pending, the Von Geldern court concluded that "the Act's ameliorative provisions were still capable of application"* and "reversed and remanded for resentencing consistent with this opinion." *Id.* at 215, 638 P.2d at 323–24 (emphasis added).

The same applies here. As in *Von Geldern, id.* at 214, 638 P.2d at 322, a retrospective application is congruent with a "pattern of [legislative] conduct," *id.* at 214–15, 638 P.2d at 322, inasmuch as Section 9 of Act 44 vested the court "with discretion in sentencing a first-time nonviolent drug offender to probation regardless of whether the offender has prior convictions." Act 44, pt. II, § 9 at 213.

Therefore, as in *Von Geldern*, the "[legislative] inclination ... to vest in the sentencing

---

34. The cases relied on by the prosecution for its contention that this court "has ruled against retrospective application of statutes containing similar or identical saving[s] clauses even when the defendant is convicted and sentenced after a statute's effective date" are plainly inapposite. (Citing *Van den Berg, supra; State v. Feliciano*, 103 Hawai'i 269, 81 P.3d 1184 (2003); *State v. Werner*, 93 Hawai'i 290, 1 P.3d 760 (App.2000); *State v. Johnson*, 92 Hawai'i 36, 44, 986 P.2d 987, 995 (App.1999)). Because the majority relies heavily on *Van Den Berg*, that case is discussed *supra* in the text of this opinion.

*Feliciano, Werner*, and *Johnson* all involve the same statute allowing a "victim to enforce a criminal restitution order in a civil court as if the restitution order were a civil judgment." *See Johnson*, 92 Hawai'i at 44, 986 P.2d at 995. *Because allowing a victim to enforce a restitution order against a defendant is not a remedial measure, these cases are obviously inapplicable to the instant case.*

35. Section 3 of Act 284, which amended HRS § 706–606.5 states, "This Act shall take effect upon its approval." Act 284, § 3 at 546.

court the discretionary authority ... [to implement a] more enlightened sentencing provision" applies here, despite the fact the prosecution had begun before the effective date of Act 44. 64 Haw. at 214, 638 P.2d at 322. Reis had not been sentenced before the effective date of Act 44, and, consequently, falls well within the holding in *Von Geldern* that extended Act 284 after judgment and sentence had been entered and during the pendency of appeal.

### B.

Similarly, with respect to the earlier version of HRS § 706-622.5 contained in Act 161 (2002), this court in *Koch*[36] said that HRS § 706-622.5 may be applied retroactively because the statute is " 'ameliorative in its intent and effect ... [and this court has] repeatedly validated the retrospective application of several remedial statutes on the basis of express or implied intent.' " 107 Hawai'i at 222, 112 P.3d at 76 (quoting *Von Geldern*, 64 Haw. at 216, 638 P.2d at 322); *see also State v. Nakata*, 76 Hawai'i 360, 376–77, 878 P.2d 699, 715–15 (1994) (determining that the retroactive application of a remedial sentencing scheme was not prohibited based on the express intent of the legislature).

In *Koch*, the defendant was "entitled to sentencing under the provisions of HRS § 706-622.5, which were *in effect at the time of his sentencing but not at the date he committed the offenses of which he was convicted*[.]" 107 Hawai'i at 221, 112 P.3d at 75 (emphasis added). Thus, based on *Koch*, and like Act 161, retroactive application of Act 44 is appropriate where it plainly fits within the legislative purpose of vesting more discretion in sentencing courts in order to reach a larger group of people. *See* Act 44, pt II,

§ 9 at 212–13. Reis's sentence, then, should be affirmed.

### X.

The majority fails to validly distinguish *Koch* and *Von Geldern*. It maintains that "neither of the statutes [in those cases] contained specific savings clauses, a crucial fact ... underlying ... the ultimate conclusion in both cases that the ameliorative amendments could apply to the defendants." Majority opinion at 90, 165 P.3d at 991 (emphasis omitted).

First, neither case contains *any* discussion of a "specific" versus a "general" savings clause nor do any of the precedents from this jurisdiction support the majority's contention that the inclusion of a "specific savings clause[ ]" is a "crucial fact." *Id.* The majority makes a significant unsubstantiated leap by inferring that the addition of a generic savings clause, such as the one at issue here, in either *Koch* or *Von Geldern*, would have negated an implied legislative intent as to Section 11.

Second, the fact that the statutes in *Koch* and *Von Geldern* did not contain savings clauses like that in Act 44 would not be dispositive of whether *Section 11* may be retroactively applied (*i.e.* to a case in which the offense preceded the effective date of Act 44) since such statutes were still subject to HRS § 1-3 which, as noted, states that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended" and HRS § 1-11 (1993) which states that "[n]o suit or prosecution pending at the time of the repeal of any law, for any offense committed, or for the recovery of any penalty or forfeiture incurred under the law so repealed, shall be affected by such repeal."[37]

---

36. Act 161 by its terms became "[e]ffective July 1, 2002[.]" Act 161 § 8 at 575.

37. Statutory savings provisions have been held applicable to both legislative acts that expressly repeal prior legislation as well as acts that amend prior legislation. *See* 1 *Substantive Criminal Law*, § 2.5 (stating that "[w]hen *these saving provisions are applied in instances in which there has been an amendment increasing the penalty or a repeal and substantial reenactment, they produce a sound result* " (emphasis added)); *Today's*

*Law and Yesterday's Crime*, Comment, 121 U. Pa. L.Rev. at 127 ("The solution to legislative inadvertence was devised in the legislatures in the form of *general saving legislation applicable to all repeals, amendments, or re-enactments* ... and the consequent shifting of the legislative presumption from one of abatement unless otherwise specified to one of non-abatement in the absence of contrary legislative direction." (Emphasis added.)); *Holiday*, 683 A.2d at 66–67 & n. 6 (stating that "when legislatures failed to provide special savings clauses in the repealing leg-

Ordinarily, then, those statutes in *Koch, Avilla, Von Geldern,* and in the instant case would be given prospective effect as in *Van den Berg.* Yet, this court confirmed retrospective effect was permissible for the remedial provisions in both *Koch* and *Von Geldern.*

Third, unlike Act 44,[38] the statutes in *Koch* and *Von Geldern* only contained ameliorative provisions which did not create new or enhanced penalties. Hence, contrary to the purported distinction drawn by the majority, a generic savings clause was not necessary to guard against *ex post facto* violations in those cases. By contrast, Act 44 is a multi-statute amendment containing both ameliorative and penalty enhancing provisions, thus necessitating a generic savings clause.

## XI.

The majority further maintains that *Von Geldern* and *Koch* are inapplicable because "the legislature knows the law when enacting statutes" and therefore, it was aware, "in enacting Act 44 . . . of . . . the crucial analytical role the absence of a savings clause played in *Koch* and *Von Geldern;* yet the legislature nevertheless chose to include a savings clause" in Act 44. Majority opinion at 97, 165 P.3d at 998 (citation omitted). But, because of the "doubt" that must accompany such an assertion, *see* 1 *Substantive Criminal Law,* § 2.5 *infra,* "[a]bsent an indication that the legislature intends a statute

to supplant common law [such as our precedent in *Von Geldern, Avilla,* and *Koch* ], the courts should not give it that effect." *Sutherland Statutory Construction* (Singer, 6th ed.) § 50:01 at 140 (citations omitted).

As was the case in *Von Geldern, Avilla,* and *Koch,* here there is simply no express indication that the legislature desired to prohibit retrospective effect to the *remedial* provisions. Those foregoing cases never discussed the lack of a savings clause as the reason for applying the ameliorative amendments to cases that originated before the effective date of the Acts. Rather, as noted, *Avilla applies the ameliorative amendment in spite of the same savings clause contained in Act 44.*[39]

Indeed, the legislature's imputed knowledge of these cases would support the opposite view from that taken by the majority— that based on the statements in the cases as quoted *supra, this court will apply ameliorative amendments retroactively even in the absence of express legislative intent. See, e.g., Von Geldern,* 64 Haw. at 215, 638 P.2d at 324 (concluding that where the "legislature amended the mandatory sentencing provisions for repeat offenders for the purpose of remedying its inflexibility," the retroactive "application of the new, more flexible law . . . would be in keeping with this legislative objective"). Thus the presumption that the legislature is aware of this court's rulings

islation, state legislatures began in the last century to adopt general savings statutes applicable *thereafter to all repeals, amendments, and reenactments of criminal and civil liabilities* " in order to shift "the legislative presumption from one of abatement unless otherwise specified to one of non-abatement in the absence of contrary legislative direction" (emphasis added) (citation omitted)); *see also Von Geldern,* 64 Haw. at 213, 638 P.2d at 322 (deciding whether an ameliorative amendment applied retroactively, and explaining that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended[,]" (quoting HRS § 1–3), and citing to Hawaii's general savings clause, HRS § 1–11 (other citation omitted)). As such, HRS § 1–11, along with HRS § 1–3, is applicable whenever a statute is amended or repealed to determine which law applies to a particular defendant.

38. Act 44 is legislation which deals predominantly with new and enhanced penalties. Section 1

notes that "[t]he legislature finds that comprehensive legislation is needed to ensure the safety of Hawaii residents due to the use of and addiction to crystal methamphetamine (especially in the form known as 'ice')[.]" Act 44 § 1 at 204.

39. The majority further maintains that "we are confronted with a specific savings clause, *i.e.,* a savings clause specifically and purposefully included in a particular piece of legislation[,]" majority opinion at 90 n.19, 165 P.3d at 991 n.19, and as such Section 11 should not be retroactively applied. However, this position is incorrect inasmuch as it was the same savings clause language that was viewed as no obstacle to application in *Avilla.* Further, the "specific" savings clause at issue here employs the same generic language attached to every criminal statute during the 2004 legislative session and thus it is incorrect to argue that it was "specifically and purposefully" included to apply to Section 11.

supports rather than detracts from the retroactive application of Section 11.[40]

## XII.

The majority's assertion that "the inclusion of a specific savings clause [ (Section 29) ] . . . operate[s] as clear evidence of the legislature's intention that the act in question should apply prospectively only[,]" majority opinion at 95, 165 P.3d at 996, is subject to further rejoinder. One commentator has noted retroactive application of ameliorative amendments is appropriate because, *"it is to be doubted that the savings statutes represent either sound policy or the actual intent of the legislature"* because "[a] legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty . . . is sufficient to meet the legitimate ends of the criminal law." 1 *Substantive Criminal Law*, § 2.5 (emphasis added). Consequently, "[n]othing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance." *Id.* (emphasis added) (citations omitted).

According to LaFave, as such, *"appellate courts have consequently given seemingly broad savings statutes a narrow reading in order not to deprive the defendant before them of the benefit of a prior legislative judgment that the conduct should not be criminal or should be subjected to lesser punishment."* *Id.* (citations and internal quotation marks omitted) (emphasis added).

Similarly, a broad savings clause repetitive of such savings statutes should be given a narrow reading in the context of an ameliorative statute.

At issue here is the same provision the legislature first attempted to pass in 2002, but that was negated by this court in *State v. Smith*, 103 Hawai'i 228, 81 P.3d 408 (2003). *Smith* concluded that the repeat offender sentencing laws took precedence over the mandatory requirement to sentence a first-time drug offender to probation. Thus, as noted before, the legislature, in enacting Section 11, intended to "clear up the confusion regarding repeat offenders" and to make it clear that "first time nonviolent drug offenders" were "eligible for diversion to treatment." Act 44, pt II, § 9 at 212–13. Nothing in the Act indicates the legislature intended that the people identified as eligible for treatment would lose the benefit of the prior act (Act 161) simply because the legislature clarified the act to pass this court's muster. Nothing in the legislative history or in the majority draft contradicts this point. Nothing, then, mandates this court to deny extension of Section 11 to persons like Reis.

In light of the foregoing history of this particular ameliorative statute, it is to be "doubted" that the legislature "actual[ly] intend[ed]," 1 *Substantive Criminal Law*, § 2.5, the generic savings clause in Act 44 to abrogate application of Section 11 by appending the so called "specific savings clause" to Act 44, as it had done in all other criminal acts in 2004.[41] *See* discussion *supra*.

---

**40.** The majority is also plainly wrong in contending that this dissent's interpretation is an attempt "to reduce the express inclusion of a savings clause in Act 44 ... to a nullity." Majority opinion at 90 n.19, 165 P.3d at 991 n.19. As noted before, the savings clause was obviously intended to obviate *ex post facto* concerns and serves that purpose for the bulk of the provisions in Act 44. *See supra*.

**41.** Although the majority maintains that Section 29 is a "specific" savings clause, a closer look indicates that it is nothing more than a generic savings clause, one that was appended to the end of every criminal provision enacted by the legislature during the 2004 legislative session. *See* 2004 Haw. Sess. L. Act 18, § 3 at 36–37 ("Bill for an Act Related to Stalking" stating "[t]his Act does not affect rights and duties that matured,

penalties that were incurred, and proceedings that were begun, before its effective date"); 2004 Haw. Sess. L. Act 49, § 2 at 242–43 ("A Bill for an Act relating to Crime" stating "[t]his Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date"); 2004 Haw. Sess. L. Act 82, § 4 at 335, 337 ("A bill for an Act Relating to Prostitution" stating "[t]his Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date"); 2004 Haw. Sess. L. Act 59, § 8 at 296, 300 ("A Bill for an Act Relating to Chapter 846E, [HRS]"); 2004 Haw. Sess. L. Act 60 § 6 at 301–302 ("A Bill for an Act Relating to Sexual Assault"); 2004 Haw. Sess. L. Act 61, § 6 at 302, 304 ("A Bill for an Act Relating to Chapter 707, [HRS]"); 2004 Haw. Sess. L. Act 90, § 15 at

Thus, contrary to the majority's position, the inclusion of a standard savings clause in this case does not indicate a "very real and clear legislative intent" to preclude application of Section 11. Majority opinion at 91, 165 P.3d at 992. The majority's argument that it "is not mutually exclusive" with the intent of the legislature to apply Section 11 prospectively and only allow the court "increased discretion . . . to new violations occurring after July 1, 2004[,]" majority opinion at 97 n.30, 165 P.3d at 998 n.30, is manifestly irreconcilable with sound policy, our precedent, and the evolution of Section 11. To reiterate, as noted by LaFave, *there is "nothing to be gained by imposing the more severe penalty" that existed before the passage of Section 11*, and the historical evolution of Section 11 portends none. 1 *Substantive Criminal Law*, § 2.5.

### XIII.

The majority's contention that this dissent would allow other provisions of Act 44 to "be susceptible to challenge as unconstitutional *ex post facto* measures" must also fall by the wayside.[42] Majority opinion at 97, 165 P.3d at 998. The Act, as noted previously, substantially addresses penalties related to drug possession, trafficking, and manufacturing.[43] The savings clause here was of a general nature obviously included to prevent the *ex*

*post facto* application of those penalty provisions. Where the legislature enacts legislation that includes penalties it would be charged with knowing that the savings clause is necessary to avoid an *ex post facto* violation. *See State v. Guidry*, 105 Hawai'i 222, 235, 96 P.3d 242, 255 (2004) (explaining that the "ex post facto clause prohibits legislatures from retroactively altering the definition of crimes or increasing the punishment for criminal cases" (citations, internal quotations, brackets, and ellipses omitted)). Accordingly, under our precedent a liberal reading is required as to the ameliorative provision. On the other hand, the non-remedial provisions are subject to the basic prohibition against retroactivity stated in the savings clause.

### XIV.

### A.

The majority maintains that a "default presumption[44] against retroactive application remains alive and well both in our jurisprudence and in the foreign jurisdictions that the dissent cites." Majority opinion at 94, 165 P.3d at 995. But except for *Von Geldern*, the cases cited by the majority for this proposition *do not involve ameliorative statutes.*[45]

354, 364 ("A Bill for an Act Relating to Habitual Operation of a Vehicle Under the Influence of an Intoxicant"). Consequently, Section 29 appears to be anything but "specific" inasmuch as it employs the same language used in every criminal statute of that legislative year, and merely reflected the "general" savings provisions in HRS §§ 1–3 and 1–11.

42. This part responds to the majority's argument that portions of Act 44 will be rendered "susceptible to challenge as unconstitutional *ex post facto* measures." Majority opinion at 97, 165 P.3d at 998.

43. *See, e.g.,* Act 44, pt I, §§ 3, 7, 13, and 14 at 205–12, 216–19, 219–21 (creating and enhancing penalties such as "[m]anufacturing a controlled substance with a child present," HRS § 712–A; "[u]nlawful methamphetamine trafficking," HRS § 712–B; "promoting a controlled substance through a minor," HRS § 712–C; and "[p]romoting a dangerous drug in the first degree . . . second degree . . . [and] third degree," HRS § 712–1241; adding a new chapter on "Drug

Dealer liability" and creating a "zero tolerance policy" in public schools, HRS § 302A–1134.6).

44. The reference to a "presumption" is antithetical to the express provisions of HRS § 1–3, HRS § 1–11, and Section 29 of Act 44, none of which refer to this legal term of art.

45. *See* cases cited by majority, *Taniguchi v. Ass'n of Apt. Owners of King Manor*, 114 Hawai'i 37, 48, 155 P.3d 1138, 1149 (2007) (a case involving application of statute to an apartment association's bylaws did not address ameliorative provisions at all); *Kramer v. Ellett*, 108 Hawai'i 426, 432, 121 P.3d 406, 412 (2005) (in a suit against a county involving an injured driver, insurance commissioner could not retroactively apply a medical rehabilitative limit unless "such operation was intended" and without any discussion of the retroactive application of criminal statutes); *Gap v. Puna Geothermal Venture*, 106 Hawai'i 325, 333, 104 P.3d 912, 920 (2004) (in a case involving sanctions against an attorney under court rules, this court did not discuss any separate treatment of ameliorative provisions); *Rob-*

The majority also cites to cases purportedly exhibiting a "general trend among the states nationally ... *not* to apply the amendments retroactively, *even when they are ameliorative.*" Majority opinion at 95–96, 165 P.3d at 996–97 (emphasis in original). However, all of the cases cited by the majority are distinguishable on various grounds. In some of the cases cited by the majority, the savings clause specifically provided for a prospective application only.[46] Other cases cited held that the retroactive application must be expressed as opposed to case law in our jurisdiction.[47] Yet other cases did not afford retroactive effect because of specific statutes or constitutional provisions.[48] Indeed, in one case cited by the majority, the statute was not deemed "ameliorative" at all.[49]

*inson v. Bailey*, 28 Haw. 462, 464 (1925) (in a case involving a contract for the sale of land between a private person and the Territory of Hawai'i no mention of ameliorative provisions made); *Evangelatos v.Super. Court*, 44 Cal.3d 1188, 246 Cal.Rptr. 629, 642, 753 P.2d 585 (1988) (in a negligence case between a high school student who was injured while attempting to make fireworks at home and the retailer of the fireworks components, no ameliorative statute mentioned).

**46.** *See Floyd*, 1 Cal.Rptr.3d 885, 72 P.3d at 822 (savings clause applied *only* to the purely ameliorative amendment in question passed by Proposition, "ameliorat[ing] the punishment for those persons convicted of nonviolent drug possession offenses who are eligible for its programs" and "shall be applied prospectively"); *State v. Ross*, 152 Wash.2d 220, 95 P.3d 1225, 1232 (2004) (act specifically sets forth that the act pertaining to the ameliorative amendments shall apply to crimes committed after the specified date; the court noting that the statute in question was amended by section 3 of the act and that "[t]he legislature ... provided that [s]ections 2 and 3 of this act take effect July 1, 2002, and apply to crimes committed on or after July 1, 2002"); *State v. Vineyard*, 96 Ariz. 76, 392 P.2d 30, 33 (1964) (although under the amended statute the crime with which the defendant was charged was changed from first degree rape to second degree rape, it did not change the crime "from a felony to a misdemeanor ... [and second degree rape] remains a felony unless and until a court in its discretion imposes a sentence of imprisonment in the county jail for not to exceed one year" and "[f]or all purposes a violation of this provision is a felony up to the judgment and sentencing").

**47.** *See Tellis v. State*, 84 Nev. 587, 445 P.2d 938, 941 (1968) (stating that although the statute under which the defendant was convicted was amended to reduce the sentence, the court correctly imposed the sentence in force at the time the defendant committed the felony pursuant to NRS 193.130, which provided that "[e]very person convicted of a felony ... shall be sentenced to a definite term of imprisonment ... within the limits prescribed by the applicable statute, *unless the statute in force at the time of commission of such felony prescribed a different penalty*" (emphasis added) (ellipses and internal quotation

marks omitted)); *Pollard v. State*, 521 P.2d 400, 401–02 (Okla.Crim.App.1974) (adopting the view that although the defendant's prior felony conviction was subsequently classified by legislature as a misdemeanor, the court noted that ameliorative statutes never apply retroactively but that "the [l]egislature may make retroactive a statute lessening the punishment and classification of an offense, but the intent to do so *mu[st] be affirmatively expressed* in said statute" (emphasis added)); *State v. Kane*, 101 Wash.App. 607, 5 P.3d 741, 744, (2000) (stating that ameliorative statute may be given retroactive application but "if the amendment is silent as to intent for retroactive application, it will be given prospective application only").

**48.** *See State v. Parker*, 871 So.2d 317, 326 (La. 2004) (stating that "[t]he general rule long applied in this state is that the law in effect at the time of the commission of the offense determines the penalty to be applied to the convicted accused," without regard to whether the amendment was ameliorative or not); *State v. Ismaaeel*, 840 A.2d 644, 647–48 (Del.Super.Ct.2004) ("Reviewing the amendment, a specific savings clause is not provided.... Given this background, the general savings statute must be considered," and it states that "[a]ny action, case, prosecution, trial or other legal proceeding in progress ... shall be preserved and shall not become illegal or terminated in the event that such statute is later amended ... irrespective of the stage of such proceedings, unless the amending act expressly provides[.]"); *Castle v. State*, 330 So.2d 10, 11 n. 1 (Fla.1976) (stating that to allow appellant the benefit of the later-enacted lower maximum sentence would be a violation of the Florida constitution entitled, "Limitation of repeal as to criminal cases," which states that

[n]o offense committed, and no penalty and forfeiture incurred, prior to the taking effect of these statutes, shall be affected thereby, and no prosecution had or commenced, shall be abated thereby, *except that when any punishment, forfeiture or penalty shall have been mitigated by the provisions of these statutes, such provisions shall apply to and control* any judgment or sentence to be pronounced, and all prosecutions shall be conducted according to the provisions of law in force at the time of such further prosecution and trial applicable to the case.

## B.

On the other hand, the majority disregards the fact that *"under the doctrine of amelioration, a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime."* *Cotton v. Ellsworth,* 788 N.E.2d 867 (Ind. App.2003) (citing *DeSantis v. State,* 760 N.E.2d 641, 645 (Ind.Ct.App.2001)) (emphasis added) (other citation omitted). *See People v. Estela,* 800 N.Y.S.2d 352, 2005 WL 517452 *2–3 (N.Y.2005) (finding that the amelioration doctrine did not bar application where the act stated that it "shall apply to crimes committed on or after the effective date thereof[,]" because the amendments "covered a wide range of issues including sentencing, the definition of certain crimes, and other related matters" and it could not interpret the clause "so narrowly when it is considering only the issue of the reduction in applicable sentences" inasmuch as it "would be illogical to find that the legislative intent was that this defendant should serve a longer period of time than someone who committed exactly the same crime a month or a day later"); *People v. Behlog,* 544 N.Y.S.2d 804, 543 N.E.2d at 71 ("The general rule is that nonprocedural statutes are not to be applied

retroactively absent a plainly manifested legislative intent"; "[t]here is an exception, however, when the Legislature passes an ameliorative amendment that reduces the punishment for a particular crime." (Other citations and internal quotation marks omitted.) (Emphasis added.)).

## XV.

The majority relies on *Holiday* for the proposition that defendants should be punished according to the statute in existence at the time of the offense.[50] Majority opinion at 93, 165 P.3d at 994. But *Holiday* is generally supportive of the position herein, for *Holiday* affirms the view that state courts "favor[ ] retroactive application of ameliorative sentencing legislation despite a general savings statute." *Id.* As noted before, the generic savings language in Section 29 is reflective of the "general savings" provisions in HRS §§ 1–3 and 1–11.[51]

As recognized by *Holiday,* state courts have determined that ameliorative sentencing provisions should apply retroactively where the legislature expressly intends to give sentencing discretion to the trial court, as the Hawai'i legislature has in this case. In *People v. Schultz,* 435 Mich. 517, 460 N.W.2d 505 (1990), the Michigan supreme court determined that an ameliorative sentencing provision would apply to the defen-

(Quoting Fla. Const. Article V, section 3(b)(1))).

**49.** *See Lunsford v. State,* 640 N.E.2d 59, 61 (Ind. Ct.App.1994) (stating that the statute in question is not ameliorative because "[a]lthough the new version of the habitual offender statute reduces the maximum enhancement for class C and class D felonies, the maximum enhancement of a class B or class A felony remains thirty years, as provided by the old statute").

**50.** The portion of the case quoted by the majority is extracted from the discussion of the District of Columbia savings clause which is comparable to the federal savings clause. The savings clause at issue in *Holiday* stated as follows:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the

enforcement of such penalty, forfeiture, or liability.

683 A.2d at 70. The holding in *Holiday* itself is inapplicable, in that, that court explained that none of the state cases could be "used to interpret the federal and District of Columbia general savings statutes, which are distinguishable either by reference to their terms or by virtue of federal court-including Supreme Court-interpretations that dictate a different result." *Id.* at 67. In other words, the District of Columbia Court did not use state court precedent. The District of Columbia, plainly, not a state.

**51.** In persisting repeatedly that this dissent implicates only general savings clauses, the majority misrepresents the dissent's position herein, that a plain reading of proceeding is not foreclosed by the so-called specific savings clause in Section 29 and that under *Avilla* an identical savings clause was not an impediment to applying a remedial provision to a prosecution that had begun before the effective date of the salient statute based even on the majority's view.

dant even though he had been tried, convicted, and sentenced prior to the effective date of the provision. *Schultz* construed the general savings clause at issue to allow application of the new sentencing legislation which "authorized the trial court to depart from" mandatory minimum sentencing because it was "the clear intent of the [l]egislature ... to vest discretion in the trial courts to determine whether a departure from the mandatory minimum terms ... is warranted." *Id.* at 508, 512. *See also State v. Cummings*, 386 N.W.2d 468, 472 (N.D.1986) (determining that the ameliorative sentencing statute at issue would apply retroactively because "the former penalty was too harsh and that the [new] and lighter punishment was ... appropriate").

Assuming, *arguendo*, the legislature's intent to give retroactive application to Act 44 is implied, courts have inferred legislative intent to retroactively apply remedial statutes. In *People v. Oliver*, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197 (1956), a similar savings clause [52] was involved. *Oliver* determined that "[a] legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law"

and "*it is safe to assume ... that it was the legislative design that the lighter, penalty should be imposed in all cases that subsequently reach the courts.*" *Id.* at 202 (emphasis added).[53]

*Holiday* noted that *Oliver* discerned this intent "from objective scrutiny of the purposes underlying sentencing statutes" and concluded that "once the legislature had seen the folly of harsher penalties than those newly enacted, any further enforcement of the repealed penalties could serve no legitimate purpose-only 'vengeance or retribution.' " *Holiday*, 683 A.2d at 67–68 (quoting *Oliver*, 151 N.Y.S.2d 367, 134 N.E.2d at 203). Therefore, *Oliver* concluded that "the legislature must have intended the new law to apply immediately, at least in all cases where *sentences had not yet been pronounced and finally adjudicated.*" *Id.* at 68 (citing *Oliver*, 151 N.Y.S.2d 367, 134 N.E.2d at 202) (emphasis added).[54]

Similarly, in the instant case, whether viewed as "express or implied[,]" *Koch*, 107 Hawai'i at 222, 112 P.3d at 76, the legislature's intent to apply Act 44 retroactively is manifest because, as in *Schultz*, it "vest[ed] discretion in the trial courts to determine

**52.** The relevant savings clauses provide that "[t]he repeal of a statute or part thereof shall not affect or impair any act done, offense committed ... penalty, forfeiture or punishment incurred prior to the time such appeal takes effect," and all proceedings commenced and pending at the time a statute is repealed "may be prosecuted ... to final effect in the same manner as they might if such provisions were not so repealed." *Oliver*, 151 N.Y.S.2d 367, 134 N.E.2d at 201 (ellipses in original).

**53.** The *Oliver* court then went on to conclude that despite the general savings clause at issue, "where an ameliorative statute takes the form of a reduction of punishment for a particular crime, *the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the [statute], even though the underlying act may have been committed before that date.*" 151 N.Y.S.2d 367, 134 N.E.2d at 201 (citations omitted) (emphasis added).

**54.** The majority maintains that "*Schultz, Cummings,* and *Oliver* all relied upon legislative *silence* regarding solely prospective application ... in order to conclude retroactive application was implicitly endorsed" whereas here there is a

"very real and clear legislative intent ... barring retroactive application within the very body of Act 44." Majority opinion at 91, 165 P.3d at 992. That those courts allowed retroactive application where the legislature was "silent" as to its intent only further indicates that this court should apply Section 11 retroactively because the legislature had made its intent *express*.

Here, the legislature wished to "clear up" an already existing law to ensure that those who were identified as needing treatment obtained that treatment. *See* Act 44, pt II, § 9 at 212–13 (stating that "[f]ewer than half" of the approximately "two hundred fifty offenders [who] were identified as eligible for diversion to treatment ... actually began treatment" and as such "*the legislature strongly urges courts to consider transferring the most severely addicted offenders or addicted offenders with criminal histories to the jurisdiction of the drug court as a condition of being sentenced to probation*" (emphasis added)). As such, the legislature evinced the view that those "offenders with criminal histories" currently within the system should be sentenced to probation, thus, presumably, not only those who committed drug-related offenses after July 1, 2004.

whether a departure from mandatory minimum terms ... [was] warranted[,]" 460 N.W.2d at 512, because the legislature has determined the "former penalty" may be too harsh for some and the new "lighter punishment was ... appropriate," *Cummings*, 386 N.W.2d at 472; and because the sentence had not yet been pronounced and finally adjudicated, *Holiday*, 683 A.2d at 68. As such, the court's action does not offend legislative intent.

## XVI.

The majority maintains that all of the foreign cases [55] "merely comport[ ] with our conclusion, appearing in *Von Geldern* and *Koch,* that the existence of a general savings clause does not prevent ameliorative amendments from being applied retroactively[.]" Majority opinion at 90–91, 165 P.3d at 991–92 (citing *Koch,* 107 Hawai'i at 222, 112 P.3d at 76; *Von Geldern,* 64 Haw. at 213–14, 638 P.2d at 322 (emphasis omitted) (other citations omitted)). This is plainly not a conclusion supported by *Koch* or *Von Geldern* which, as noted above, do not distinguish between a general and a specific savings clauses, as the majority does.

Instead, as noted before, the generic savings clause in Act 44—the same one included in all of the criminal acts in the 2004 legislative session, was plainly intended to prevent *ex post facto* violations—not to prevent the sentencing courts from exercising discretion the legislature deemed necessary to interdict

an ice epidemic. That in Act 44 the legislature intended merely to clarify what it had already attempted to do via Act 161 is further evidence that it did not expect the amendment to preclude first-time offenders from receiving the treatment deemed necessary.

Finally, assuming *arguendo* the relevance of the majority's distinction between specific and general savings, the inclusion of the same savings clause within an act does not, in and of itself bar an ameliorative provision from applying retroactively. As demonstrated by *Avilla,* an ameliorative amendment may be implemented retroactively despite the inclusion of the same "specific" savings clause the majority relies on and despite the fact that the postulated "unitary" criminal prosecution had been initiated before passage of the amendment.

## XVII.

Contrary to the majority's position, this dissent's interpretation will not produce "unjust[,]" "inconsistent[,]" or "arbitrary" "outcomes among defendants, which would vary as a function of the vagaries of the scheduling process." Majority opinion at 93, 165 P.3d at 994. There is nothing "unfair" or "arbitrary" about applying Section 11 in this case, as there was nothing unfair or arbitrary about applying ameliorative provisions in *Avilla* and *Von Geldern,* or in the numerous state decisions cited *supra,* where the subject

---

**55.** The majority contends that the cases this dissent cites from other jurisdictions contain "infirmities" to the extent that in *Oliver* "the legislature had clearly provided that '[t]he repeal of any statute ... shall not affect ... any ... offense committed ... prior to the time such repeal takes effect[.]' " Majority opinion at 91 n.22, 165 P.3d at 992 n.22 (citing *Oliver,* 151 N.Y.S.2d 367, 134 N.E.2d at 200–04) (ellipses in original). This contention is difficult to comprehend as the majority maintains on one hand, that "[t]he inclusion of a specific savings clause within the body of the amending statute demonstrates a clear legislative intent that the contents of the act do not apply retroactively[,]" majority opinion at 90, 165 P.3d at 991 (emphasis omitted), and that *Oliver* is distinguishable because it relied on "legislative silence" and only implicated a "general savings clause[,]" majority opinion at 91, 165 P.3d at 992, while on the other hand quoting the "general savings clause" at issue in *Oliver* for the

proposition that "the legislature had clearly provided that [the new amendment] shall not affect any offense committed," majority opinion at 91 n.22, 165 P.3d at 992 n.22 (internal quotation marks and ellipses omitted).

The majority cannot "have it both ways," or randomly decide when a general savings clause indicates specific legislative intent and when it does not. As to the only other "infirmit[y]" the majority identifies, that *Schultz* was a plurality opinion, majority opinion at 91 n.22, 165 P.3d at 992 n.22, is hardly an infirmity inasmuch as the plurality in *Schultz* is reflective of the predominant state court view allowing for the retroactive application of ameliorative sentencing provisions. As *Holiday* explained, "[o]ther state courts have reached the same result with somewhat different emphases" in applying remedial statutes retroactively. 683 A.2d at 68 (citations omitted).

proceedings took place after the effective date of the statute. The legislative intent was to provide more discretion to the sentencing courts in order to extend drug treatment to a broader group of defendants. *See* Act 44, pt II, § 9 at 212–13. Under Act 44, these considerations were well within the discretion of the courts to implement insofar as they related to scheduling of sentencing hearings.[56]

The majority insists that the danger of "inconsistent" results is evidenced by *Tapp*. Majority opinion at 93, 165 P.3d at 994. Initially, it should be noted that the situation addressed in *Tapp* is not the case before this court since Reis's sentencing took place after the effective date of the amendment. However, in response to the majority, it may be observed that *Tapp* concerned two cases in which two defendants were convicted of committing the same crime. One defendant was sentenced prior to the effective date of an ameliorative statute, while the other was sentenced after the effective date. The defendant sentenced after the effective date then reaped the "benefit" of the ameliorative amendment while one sentenced before did not because "the judge followed the law in force and effect at that time." *Tapp*, 490 P.2d at 335 (concluding that "[a]s to those defendants who were sentenced prior to the amendment, the statute gives no aid" (citation omitted)).

*Tapp* offered several rationales as supportive of remedial legislation for its decision, recognizing, *e.g.*, that where the legislature has expressed an intent to give a lesser penalty, "the courts should give effect to the enactment . . . [on] the effective date[,]" "to insist on the prior existing harsher penalty is a refusal to accept . . . the [shift in] emphasis from vengeance and punishment to treat-

ment and rehabilitation" and "in case of doubt or uncertainty as to the degree of crime, [the defendant] is entitled to the lesser [penalty.]"[57] *Id.*

Nevertheless, the majority asserts additional Utah case law purportedly supports its charge of inconsistency. For example, the Utah Court of Appeals, relying on the same reasons discussed in *Tapp*, concluded that a " 'defendant's actions that delay sentencing are irrelevant' to receiving the benefits of the amended sanctions[,]" majority opinion at 94, 165 P.3d at 995 (citing *State v. Patience*, 944 P.2d 381, 385 (Utah Ct.App.1997) (citation omitted)), because it was necessary to apply the "statute in effect at the time of . . . sentencing[,]" *Patience*, 944 P.2d at 392. The Utah approach is consistent with the general view interpreting savings clauses liberally in the case of ameliorative sentencing statutes, but employing various rationales.

In any event, *no inconsistency would result in our jurisdiction because this court has allowed retroactive application of ameliorative sentencing even after prior sentencing has already occurred and while a case is on appeal. See Von Geldern*, 64 Haw. at 215, 638 P.2d at 323 (stating that "[w]hen Act 284 became effective, the judgment and sentence of the trial court in the defendant's case was not final since his appeal was still pending" (citation omitted)). As related before, some courts, such as our own, have eschewed a literal interpretation of a savings clause to avoid what the majority characterizes as an "inconsistent" result and have allowed retroactive application of ameliorative amendments, even throughout the appeals process.

## XVIII.

The majority claims its "construction of 'proceedings' and 'incurred' ensures the con-

---

56. This part responds to the majority's argument that this dissent will "produce[ ] inconsistent and unjust outcomes among defendants[.]" Majority opinion at 93, 165 P.3d at 994.

57. The majority maintains that its application of Section 11 is not "arbitrary" or "unjust[,]" instead it argues that general savings clauses "represent a rule of statutory construction that may yield, and often [do], to more express, specific intent regarding retroactive application of ameli-

orative amendments." Majority opinion at 94, 165 P.3d at 995 (citation omitted). This position is plainly not supported by our case law. As discussed earlier, in *Von Geldern*, this court noted that although it could not find any specific intent in the act itself or within the legislative history, it nevertheless applied the amendment retroactively based on a pattern of legislative behavior. Further, this court in *Avilla*, even according to the majority reading, applied an ameliorative statute retroactively despite the inclusion of a savings clause within the Act.

sistent application of justice and avoids potential constitutional infirmity." Majority opinion at 93, 165 P.3d at 994. To the contrary, (including the reasons discussed *supra*,) it would be arbitrary and unjust *not* to apply the ameliorative provisions in this case. As *Oliver* stated, it would serve "no legitimate purpose[.]" 151 N.Y.S.2d 367, 134 N.E.2d at 203. Further, the California Supreme Court pointed out in *Estrada*, 48 Cal. Rptr. 172, 408 P.2d at 951, that where the legislature amends a statute to reduce the penalty, the "lighter penalty now deemed to be sufficient should apply[.]"

> When the [l]egislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. *It is an inevitable inference that the [l]egislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. ... [T]o hold otherwise would be to conclude that the [l]egislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology.*

*Id.* (emphases added). *See also State v. Macarelli*, 118 R.I. 693, 375 A.2d 944, 947 (1977) (adopting *Oliver's* "sound judicial philosophy" because any other interpretation *"would amount to nothing more than arbitrary retribution in contravention of the obvious legislative purpose* behind the mitigation of the penalty" (emphasis added)).

### XIX.

Similarly here, as the court insightfully opined, "the intent of the legislature [in Act 44] ... is clear, and that's to give the [c]ourt more discretion in sentencing"; and any other interpretation would amount to "arbitrary retribution" in contradiction to "the obvious legislative purpose[,]" *Macarelli*, 375 A.2d at 947, of Sections 9 and 11 of Act 44 to "provide the court with discretion in sentencing" to "diver[t offenders] to drug treatment instead of prison" and to find a "solution to

cure the ice epidemic." Act 44, pt II, § 9 at 212–13. Where the legislature has created a lesser penalty it is "an inevitable inference that the [l]egislature must have intended" that it apply "to all cases ... it constitutionally could apply to." *Estrada*, 48 Cal.Rptr. 172, 408 P.2d at 951.

In the instant case, there is no constitutional obstacle to extending the ameliorative provisions to Reis. To interpret the statute in any other way is to "conclude that the [l]egislature was motivated by a desire for vengeance[,]" *id.*, despite its expressed concern of "treat[ing] the present generation of ice abusers and prevent[ing] future generations from becoming substance abusers," Act 44, § 1 at 204. This is especially true in the case of Reis who appears to be the type of candidate the legislature envisioned would benefit from Act 44. As the court noted, "[s]eparate and apart from the legal issues" it felt "compelled to express [its] disappointment in the State using its prosecutorial discretion" because "this does not appear to be the appropriate case[.]"

The court indicated that "[Reis] has a long and tough road ahead of her" but she has gone to "Queen's," is currently "in a dual-diagnosis program ... under the supervision [of] Diamond Head Mental Health Clinic" and, "that plus the term in jail she did, ... is exactly what the legislature intended[.]" The court further opined that "under court supervision, people can prove that they are deserving" and "the [c]ourt wants to support [that] ... I can't imagine either [Reis] or society being better off by me sentencing her as a repeat offender at this time and giving her five years in prison." Therefore, contrary to the majority's contention, precluding the application of remedial provisions to Reis attributes to the legislature an intent to impose "arbitrary retribution" for no legitimate reason within the scope of Act 44.

### XX.

Lastly, the majority maintains that its opinion is consistent with *Smith* and *Walker*.[58] Majority opinion at 98, 165 P.3d at 999.

---

**58.** This part responds to the majority's argument

that *Walker* and *Smith* are dispositive of the case

In enacting Act 44, the legislature was obviously attempting to reverse the effect of *Smith.* In *Smith,* this court held with respect to Act 161 (2002), the prior version of Act 44, "that the *repeat offender* sentencing laws took precedence over the mandatory requirement to sentence a first-time drug offender to probation." *Walker,* 106 Hawai'i at 4, 100 P.3d at 598 (emphasis added) (citing *Smith, supra*). This court recognized that "in response to [*Smith*], the legislature amended HRS § 706–622.5" by way of Act 44. *Id.*

*Walker* was not concerned with the ameliorative application of Act 44. Hence, any reference to the retroactive application of Act 44 in *Walker* must be considered dicta inasmuch as this court said in that case that "our decision in *Smith* is *entirely dispositive* of the present matter." *Id.* at 9, 100 P.3d at 603 (citing *Smith, supra*) (emphasis added). *Walker* is further distinguishable from the instant case, as the court noted, because in *Walker,* "the arrest, the plea, the conviction, sentencing, all took place before Act 44's effective date[.]" Majority opinion at 83, 165

P.3d at 984. Thus, definitively, the entire case proceeding in *Walker* was completed prior to the effective date of Act 44, whereas, here, Reis was not sentenced until after Act 44 became effective. Accordingly, neither case dictates the result here.

### XXI.

It cannot be plainer then, that this savings clause is not a bar to application of a remedial sentencing provision. The legislature has expressed its intent that persons with prior convictions are not (nor, apparently, were ever intended to be) precluded from the remedial recourse of a probationary sentence for the purpose of drug rehabilitation. Accordingly, I would affirm the court's sentence.[59]

---

here, insisting that "in keeping with this court's holdings in *Smith* ... and *Walker* ... the [court] could not sentence Reis to probation." Majority *opinion at 98, 165* P.3d at 999.

**59.** The majority states that, "[i]n light of our disposition, we need not reach the prosecution's argument, asserting that the separate nature of Reis's two drug-related offense[s] prevented the circuit court from sentencing her to probation as a first-time drug offender, pursuant to HRS § 706–622.5 (Supp.2004)." Majority opinion at 98 n.32, 165 P.3d at 999 n.32. In that regard, on appeal to this court, the prosecution contends that "even if Act 44 applied retrospectively, [Reis] is not eligible for sentencing under HRS [§ ] 706–622.5 because she is not a first-time drug offender" inasmuch as "she was being sentenced for offenses committed on different dates and charged in two separate criminal cases." However, the prosecution raises this argument for the first time on appeal. As the prosecution accurately states in its opening brief to this court, in its motions to reconsider before the court, the prosecution "argued that the court's sentence of probation was illegal because although Act 44 allows 'a select class of defendants who are eligible for repeat offender sentencing to be sentenced to probation if specific criteria are met,' in the present case, *the dates of the offenses and the dates of the cases were charged were before July 1st, 2004, the effective date of Act 44.*" (Emphasis added.) At the hearing on the prosecu-

tion's motion held on February 22, 2005, the prosecution reiterated the same argument.

In sum, the prosecution's position before the court was solely that because "the dates of the offenses and the dates of the cases were charged were before July 1st, 2004, the effective date of Act 44[,]" Reis should be sentenced as a repeat offender pursuant to HRS § 706–606.5. However, to this court, the prosecution raises the new argument that Reis is not a first-time drug offender within the meaning of HRS § 706–622.5. Consequently, "[a]s a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." *State v. Moses,* 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) (citing *State v. Ildefonso,* 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) ("Our review of the record reveals that [the defendant] did not raise this argument at trial, and thus it is deemed to have been waived.")); *State v. Hoglund,* 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal."); *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.,* 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal.")).

Inasmuch as the prosecution's argument that Reis is not a first-time drug offender for purposes of HRS § 706–622.5 is a "new legal theor[y] as to why [it] should have prevailed at trial[,]" *id.,* it should be deemed waived. *See State v. Cunta-*

*pay*, 104 Hawai'i 109, 113 n. 9, 85 P.3d 634, 638 n. 9 (2004) (recognizing that "the record [did] not indicate that the prosecution raised the issue of abandonment in the circuit court" and, therefore, "waived this point as a matter for appeal" (citing *State v. Rodrigues*, 67 Haw. 496, 498, 692 P.2d 1156, 1158 (1985)); *see also State v. Harada*, 98 Hawai'i 18, 30, 41 P.3d 174, 186 (2002) (acknowledging that "[o]n appeal, the prosecution alternatively contends that exigent circumstances at the time the warrant was executed excused the police officers' compliance with HRS § 803–37" but agreeing with the defendant that "the prosecution failed to properly preserve the issue whether there were exigent circumstances and, therefore, has waived the issue" (citing *Rodrigues*, 67 Haw. at 498, 692 P.2d at 1158)); *Rodrigues*, 67 Haw. at 498, 692 P.2d at 1158 (stating that "[a] review of the record reveals that the [prosecution] had never presented the issue of exigent circumstances, nor the issue of a 'good faith' exception to the exclusionary rule to the trial court" and these issues were deemed waived)).